# EXHIBIT 1

# THE NORTHERN TRUST COMPANY EMPLOYEE WELFARE BENEFIT PLAN

*Effective as of January 1, 2001*

## TABLE OF CONTENTS

Page

**I.   GENERAL PROVISIONS AND DEFINITIONS** ........................................................ 1

1.1.   Effective Date ............................................................................................... 1
1.2.   Purpose .......................................................................................................... 1
1.3.   Plan Supplements ........................................................................................ 1
1.4.   Incorporation of Definitions ..................................................................... 2
1.5.   Adult Extended Household Member ......................................................... 2
1.6.   Adverse Benefit Determination ................................................................. 2
1.7.   Affiliated Employer ..................................................................................... 2
1.8.   Claims Administrator ................................................................................. 2
1.9.   Code ............................................................................................................... 3
1.10.  Company ....................................................................................................... 3
1.11.  Dependent ..................................................................................................... 3
1.12.  Domestic Partner ......................................................................................... 4
1.13.  Eligible Employee ........................................................................................ 4
1.14.  Employer or Participating Employer ....................................................... 4
1.15.  ERISA ........................................................................................................... 4
1.16.  Participant .................................................................................................... 4
1.17.  Participating Program or Program ........................................................... 5
1.18.  Participating Program Administrator ...................................................... 5
1.19.  Plan ............................................................................................................... 5
1.20.  Plan Administrator ...................................................................................... 5
1.21.  Plan Sponsor ................................................................................................ 5
1.22.  Plan Year ...................................................................................................... 5
1.23.  Summary Plan Description ......................................................................... 5

**II.   GENERAL PLAN TERMS** ........................................................................................ 6

2.1.   Employee Eligibility ................................................................................... 6
2.2.   Insuring and Funding Benefits ................................................................. 6
2.3.   Benefits, Limitations and Termination of Rights to Benefits ............... 7
2.4.   Payment of Benefits .................................................................................... 7
2.5.   Inspection of Documents ............................................................................ 7
2.6.   COBRA Continuation Coverage ............................................................... 7
2.7.   Portability, Nondiscrimination .................................................................. 7
2.8.   Maternity-Related Benefits ....................................................................... 8
2.9.   Mental Health Benefits .............................................................................. 8
2.10.  Family and Medical Leave ......................................................................... 8
2.11.  Breast Cancer Coverage ............................................................................ 8
2.12.  USERRA ....................................................................................................... 8
2.13.  Medicaid Eligibility .................................................................................... 8
2.14.  Termination of Participation in the Plan ................................................. 9

**III.  ADMINISTRATION** .................................................................................................. 10

3.1.   Plan Administrator ...................................................................................... 10
3.2.   Duties and Powers of the Plan Administrator ......................................... 10

# TABLE OF CONTENTS
## (continued)

Page

|   |   |   |   |
|---|---|---|---|
| 3.3. | Rules and Decisions | 11 |
| 3.4. | Delegation and Allocation of Responsibility of the Plan Administrator | 11 |
| 3.5. | Representations to Fiduciaries | 11 |
| 3.6. | Administrator's Decision Final | 12 |
| 3.7. | Indemnity | 12 |
| 3.8. | Fiduciary Duties and Responsibilities | 13 |

**IV.    CLAIMS AND APPEALS** .................................................................. **14**

| 4.1. | Claims and Appeals Procedures for Participating Programs Subject to ERISA (for claims received prior to 2002) | 14 |
| 4.2. | Claims and Appeals Procedures for Participating Programs Subject to ERISA (for claims received on or after January 1, 2002) | 15 |
| 4.3. | Claims and Appeals Procedures for Non-ERISA Participating Programs | 19 |

**V.    AMENDMENT OR TERMINATION** ................................................. **20**

| 5.1. | Company Not Committed to Permanent Welfare Benefits | 20 |
| 5.2. | Right to Amend | 20 |
| 5.3. | Right to Terminate | 20 |
| 5.4. | Dissolution, Merger, Consolidation or Reorganization of an Employer | 20 |
| 5.5. | Notice of Amendment or Termination | 21 |

**VI.    PARTICIPANT RIGHTS AND RESPONSIBILITIES** ....................... **22**

| 6.1. | No Enlargement of Employee Rights | 22 |
| 6.2. | No Assignment | 22 |
| 6.3. | Qualified Medical Child Support Order | 22 |
| 6.4. | Subrogation and Third-Party Reimbursement | 22 |
| 6.5. | Benefit Coordination | 25 |
| 6.6. | Right to Receive and Release Necessary Information | 26 |
| 6.7. | Notice of Address | 26 |

**VII.    GOVERNING TERMS AND APPLICABLE LAW** ........................... **27**

| 7.1. | Severability | 27 |
| 7.2. | Contracts and Agreements | 27 |
| 7.3. | Resolution of Conflicts | 27 |
| 7.4. | Application of State Law | 27 |

**VIII.    GENERAL PROVISIONS** .................................................................. **28**

| 8.1. | Additional Employers | 28 |
| 8.2. | Facility of Payment | 28 |
| 8.3. | Evidence | 28 |
| 8.4. | Uniform Rules | 28 |
| 8.5. | Unclaimed Self-Funded Plan Funds | 28 |
| 8.6. | Gender and Number | 29 |

**SUPPLEMENT A  THE NORTHERN TRUST COMPANY EMPLOYEE WELFARE BENEFIT PLAN** ................................................................. **A-1**

**TABLE OF CONTENTS**
**(continued)**

Page

SUPPLEMENT B  EMPLOYERS PARTICIPATING IN THE NORTHERN
TRUST COMPANY EMPLOYEE WELFARE BENEFIT PLAN....................................... B-1

## THE NORTHERN TRUST COMPANY
## EMPLOYEE WELFARE BENEFIT PLAN

### I.    GENERAL PROVISIONS AND DEFINITIONS

#### 1.1.    Effective Date

The Northern Trust Company (the "Company") has adopted various benefit programs, which were originally separate welfare plans established by the Company for the exclusive benefit of Eligible Employees, former employees (if applicable), Dependents and beneficiaries. These welfare plans, which are identified in Supplement A, are hereby merged into the Northern Trust Company Medical Plan, which is hereby amended and restated effective as of January 1, 2001 as the Northern Trust Company Welfare Benefit Plan (the "Plan"). Each benefit program that forms a part of this Plan is referred to as a "Participating Program" in this Plan document.

#### 1.2.    Purpose

The Plan is maintained by the Company to provide comprehensive welfare benefits to certain Eligible Employees (and, where applicable, their enrolled Dependents) of Participating Employers. This Plan is intended to constitute a welfare plan under section 3(1) of ERISA. The Plan currently consists of the following health and welfare benefit programs: (a) health, vision and dental care benefits intended to comply with section 105 of the Code; (b) a flexible benefits arrangement intended to comply with section 125 of the Code; (c) short- and long-term disability benefits intended to comply with section 105 of the Code; (d) basic, supplemental and dependent life insurance benefits intended to comply with section 79 of the Code; (e) accidental death and dismemberment benefits intended to comply with section 105 of the Code; and (f) educational assistance benefits intended to comply with section 127 of the Code. For purposes of satisfying applicable nondiscrimination rules under section 105 of the Code, each Participating Program may be tested separately.

The Plan sets forth uniform rules and policies for all Participating Programs. The Participating Programs are intended to conform to the written Plan document as well as to comply with applicable laws. No assets of any Participating Program will inure to the Company or any Employer; instead, such assets will be used exclusively to provide benefits under the Participating Programs and to defray reasonable expenses in administering the Participating Programs or the Plan.

#### 1.3.    Plan Supplements

Plan Supplements are attached to and form a part of this Plan document. From time to time, Supplements may be added for purposes of modifying provisions of the Plan or for adding or terminating Participating Programs under the Plan.

1.4    Incorporation of Definitions

Each Participating Program is documented as identified in Supplement A. Such documentation is incorporated by reference into this Plan document. This Section 1.4 further incorporates by reference the terms and definitions that are specific to each Participating Program. Definitions at Section 1.5 and following under this Article I will apply uniformly and without exception to all Participating Programs, and to all Plan Supplements unless otherwise specified in the applicable Supplement.

1.5.    Adult Extended Household Member

"Adult Extended Household Member" means an adult over age 18 and under age 65 who is (1) the Eligible Employee's adult child who is no longer a student, parent, grandparent, brother or sister or (2) the parent of the Eligible Employee's spouse or Domestic Partner, and who may be claimed as a dependent on the Eligible Employee's Federal income tax return.

1.6.    Adverse Benefit Determination

"Adverse Benefit Determination" means a denial, reduction or termination of a benefit, or a failure to provide or make a benefit payment (in whole or in part). This includes a denial, reduction, termination or failure to provide or make payment based on a determination of ineligibility.

1.7.    Affiliated Employer

"Affiliated Employer" means any corporation which is a member of the same controlled group of corporations (within the meaning of Code section 414(b)) as the Plan Sponsor, or an unincorporated trade or business which is under common control with the Plan Sponsor (within the meaning of Code section 414(c)), any organization which is a member of an affiliated service group (within the meaning of Code Section 414(m)) of which the Plan Sponsor is also a member, and any other entity required to be aggregated under Code section 414(o).

1.8.    Claims Administrator

"Claims Administrator" means, with respect to a Par cipating Program, the person(s) or entity(ies) appointed by the Company to serve as the claims administrator for such Participating Program. The Claims Administrator for insurance policies and HMO contracts will be the insurance company or HMO issuing the insurance policy or contract. The Claims Administrator for self-funded Participating Programs will be the Plan Administrator (or its delegate). To the extent such authority is delegated by the Plan Administrator, the Claims Administrator for a self-funded Participating Program will have the full discretionary authority to determine (i) eligibility for participation in a Participating Program, and (ii) benefits payable, if any, under a Participating Program. The Claims Administrator will be a named fiduciary, with respect to the authority delegated to the Claims Administrator, of the Plan. Each Claims Administrator under an

insured Participating Program (including an HMO) will have full discretionary authority to determine benefits payable under such Participating Program, subject to the terms of the insurance policy or HMO contract under which benefits are provided. The Company shall have the full discretionary authority to determine eligibility under an insured Participating Program except to the extent such authority has been delegated to the Claims Administrator for the Participating Program. Names and addresses for the specific Claims Administrators for fully insured Participating Programs are found in the applicable insurance certificate or HMO membership booklet.

1.9.    Code

"Code" means the Internal Revenue Code of 1986, as amended, and the regulations thereunder.

1.10.    Company

"Company" means The Northern Trust Company, an Illinois state bank, and its successors and assigns.

1.11.    Dependent

Unless otherwise specified in the Participating Program documents, "Dependent" means:

(a)    One adult who resides with the Eligible Employee (or is in an extended care facility) and is the Eligible Employee's lawful spouse (who is not legally separated from the Employee), the Eligible Employee's Domestic Partner, or an Adult Extended Household Member;

(b)    The Eligible Employee's, spouse's or Domestic Partner's unmarried child (including step-children, legally adopted children, children placed for adoption, and natural children) who is under the age of 19 and is wholly dependent on the Eligible Employee for support;

(c)    The Eligible Employee's, spouse's or Domestic Partner's unmarried child who is under the age of 19 and for whom the Eligible Employee, spouse or Domestic Partner is the legal custodian or the legal guardian (proof of legal custodianship or guardianship is required);

(d)    The Eligible Employee's, spouse's or Domestic Partner's unmarried child who is subject to a qualified medical child support order, provided that the child is under the age of 19;

(e)    An unmarried child (as defined in paragraphs (b) through (d) above) who is between the ages of 19 and 26, inclusively, who is a full-time student at an accredited educational institution, who relies on the Eligible Employee for primary support, and who does not work full-time; and

(f)    An unmarried child (as defined in paragraphs (b) through (d) above) who is age 19 or older who is and continues to be both:

    (i)    incapable of self-support by reason of a mental or physical handicap; and

    (ii)    chiefly dependent on the Eligible Employee for economic support and maintenance.

Proof of such incapacity must be provided to the Plan Administrator upon request.

## 1.12.  Domestic Partner

"Domestic Partner" means an unmarried man or woman who is at least 18 years old and mentally competent to form contracts, and who, as determined by the Plan Administrator, is: (i) in a sole, committed relationship with an Eligible Employee that has lasted at least one year and is expected to last indefinitely; (ii) financially interdependent with the Eligible Employee for each other's welfare and financial obligations; (iii) sharing his or her principal place of residence with the Eligible Employee; and (iv) not related to the Employee in any way which would prevent their marriage in the state in which they reside.

## 1.13.  Eligible Employee

"Eligible Employee" is defined in Section 2.1 of this Plan Document.

## 1.14.  Employer or Participating Employer

"Employer" or "Participating Employer" means the Company and any Affiliated Employer of the Company that participates in the Plan provided that the Company has consented to that participation as described in Section 8.1. Participating Employers that have been permitted by the Company to participate in the Plan are listed in Supplement B.

## 1.15.  ERISA

"ERISA" means the Employee Retirement Income Security Act of 1974, as amended, and the regulations thereunder.

## 1.16.  Participant

"Participant" means (i) any Eligible Employee who elects to participate in a Participating Program in accordance with its terms and conditions, and has not for any reason become ineligible to participate further in that Participating Program, and (ii) any eligible Dependents of the Eligible Employee properly enrolled in the Participating Program. The terms and conditions for participation for each Participating Program are found in the documents described in Supplement A.

1.17.  Participating Program or Program

"Participating Program" or "Program" means an employee benefit plan that forms a part of this Plan as set forth in the documents described in Supplement A.

1.18.  Participating Program Administrator

"Participating Program Administrator" means with respect to a Participating Program, the insurance company, HMO, or such other person(s) or entity(ies) to which the Plan Administrator has allocated or delegated responsibility in accordance with Section 3.4(a) of the Plan.

The responsibilities allocated or delegated to a particular Participating Program Administrator shall be limited to those duties and powers listed in Section 3.2 which are also necessary for the proper administration of the particular Participating Program.

1.19.  Plan

"Plan" means The Northern Trust Company Employee Welfare Benefit Plan as set forth in this document.

1.20.  Plan Administrator

"Plan Administrator" means the Employee Benefit Administrative Committee of the Company as constituted from time to time.  The Plan Administrator will be a named fiduciary of the Plan with respect to the duties and responsibilities allocated to the Plan Administrator.  The Plan Administrator, or its designated representative, will have the discretionary authority to manage and administer the Plan.

1.21.  Plan Sponsor

"Plan Sponsor" means the Company.

1.22.  Plan Year

"Plan Year" means the 12-month period beginning on January 1st and ending on December 31st.

1.23.  Summary Plan Description

"Summary Plan Description" or "SPD" means, for those Participating Programs described in the Health and Welfare Benefit Sourcebooks, the Health and Welfare Benefit Sourcebooks for each such Participating Program, and, for all other Participating Programs, the separate summary plan description distributed to Participants.

## II.   GENERAL PLAN TERMS

### 2.1.   Employee Eligibility

"Eligible Employee" means any employee or former employee of an Employer who is eligible to participate in and receive benefits under one or more Participating Programs. The term "Eligible Employee" includes any employee or former employee not participating in a Participating Program solely because he or she has not made a required election.

Employees are generally eligible to participate in the Participating Programs if they are regular employees who are scheduled to perform at least 20 hours of service per week for an Employer, unless another eligibility standard is specified in the Participating Program documents. Such employees become eligible to participate in the Participating Programs as of the first day of the month following the later of their date of hire or the date on which they become eligible to participate, unless otherwise specified in a Participating Program.

An employee's eligibility to receive benefits under the Plan will be dictated by and limited to his or her eligibility to receive benefits under each Participating Program.

Eligible Employees do not include individuals in jobs classified by an Employer as "temporary" or "limited post" positions or any other individual in the temporary employ of an Employer. Further, any other provision of the Plan or a Participating Program to the contrary notwithstanding, no individual will be considered an Eligible Employee nor will such individual be otherwise eligible to participate in or receive benefits under the Plan during any period in which such individual is providing services to an Employer under a contract, arrangement or understanding with either such individual or with an agency or leasing organization that treats the individual as either an independent contractor or an employee of such agency or leasing organization, even if such individual is later determined (by judicial action or otherwise) to have been a common law employee of an Employer rather than an independent contractor or an employee of such agency or leasing organization.

### 2.2.   Insuring and Funding Benefits

Funding for the Plan will consist of an aggregation of the funding for all Participating Programs and may include funding through insurance contracts, through the general assets of the Employers, through a trust, or through any combination thereof. The Company will have the right to insure any benefits under the Plan or to establish any fund or trust for the payment of benefits under the Plan either as mandated by law or as the Company deems advisable. If any benefit is funded by the purchase of insurance, the benefit will be payable solely by the insurer. To the extent funds are transferred to a trust to provide any benefit, that benefit will be payable from the assets of such trust; neither the Plan Sponsor nor any other Employer will have any further responsibility to pay such benefit. Anything in the Plan or a Participating Program to the contrary notwithstanding,

no funding arrangement which is established to provide benefits for a specific Participating Program shall be used to provide benefits under any other Participating Program.

2.3.   <u>Benefits, Limitations and Termination of Rights to Benefits</u>

The benefits available under the Plan will consist of an aggregation of the benefits available under each Participating Program in which a Participant is eligible to participate including all limitations and exclusions with respect to each Participating Program's benefits. The benefits available under each Participating Program and the limitations with respect to such benefits are set forth in the documents described in Supplement A.

A Participant's right to benefits under this Plan will be dictated by and limited to his or her right to benefits under each Participating Program in which the Participant participates. Any termination or cessation of a Participant's rights or coverage under a Participating Program will be considered a termination or cessation of those same rights or coverage with respect to that Participating Program under the Plan. The Plan provides for no rights other than those provided for under each Participating Program.

2.4.   <u>Payment of Benefits</u>

The benefits under the Plan will be payable according to the payment provisions of each Participating Program. Benefits will be paid from an insurance contract, the general assets of an Employer, or from a trust, as is appropriate under the applicable Participating Program.

2.5.   <u>Inspection of Documents</u>

This Plan document and the documents listed in Supplement A will be available for inspection during normal business hours at the Human Resources office of the Plan Sponsor or other reasonable location designated by the Plan Administrator.

2.6.   <u>COBRA Continuation Coverage</u>

All Participating Programs subject to the "continuation coverage" requirements of the Consolidated Omnibus Budget Reconciliation Act of 1985 ("COBRA"), as amended, will be administered n accordance with Code section 4980B, any related regulations, and the administrative rules established by the Plan Administrator.

2.7.   <u>Portability, Nondiscrimination</u>

All Participating Programs subject to the "portability" provisions of the Health Insurance Portability and Accountability Act of 1996 ("HIPAA"), as amended, will be administered in accordance with HIPAA's provisions and any related regulations. All Participating Programs subject to the "nondiscrimination" provisions of HIPAA will be administered in accordance with HIPAA's provisions and any related regulations.

2.8    Maternity-Related Benefits

All Participating Programs subject to the provisions of the Newborns' and Mothers' Health Protection Act will be administered in accordance with that Act's provisions and any related regulations.

2.9.    Mental Health Benefits

All Participating Programs subject to the "parity" requirements of the Mental Health Parity Act will be administered in accordance with that Act's provisions and any related regulations.

2.10.    Family and Medical Leave

All Participating Programs subject to the "maintenance of health benefits" provisions of the Family and Medical Leave Act, 29 U.S.C. §2614(c), as amended, will be administered in accordance with those provisions, any related regulations, and the administrative rules established by the Plan Administrator.

2.11.    Breast Cancer Coverage

All Participating Programs subject to the provisions of the Women's Health and Cancer Rights Act under ERISA section 713 will be administered in accordance with these provisions and any related regulations.

2.12.    USERRA

All Participating Programs subject to the "continuation coverage" requirements of the Uniformed Services Employment and Reemployment Rights Act of 1994 ("USERRA"), as amended, will be administered in accordance with USERRA, any related regulations, and the administrative rules established by the Plan Administrator.

2.13.    Medicaid Eligibility

As required by section 609(b) of ERISA, if a Participant is eligible for, or is provided, medical assistance under a state plan for medical assistance approved under title XIX of the federal Social Security Act (Medicaid), any Participating Program subject to section 609(b) of ERISA shall not take such eligibility or provision of benefits into account in enrolling such an individual in any such Participating Program or making payment for benefits for such an individual under any such Participating Program. Further, payment for benefits under any Participating Program subject to section 609(b) of ERISA for such individual shall be made in accordance with any assignment of rights made by or on behalf of such an individual as required by a state plan for medical assistance approved under title XIX of the federal Social Security Act pursuant to section 1912(a)(1)(A) of the Act (as in effect on August 10, 1993). Finally, to the extent payment has been made under Medicaid for any such individual for benefits payable under any Participating Program subject to section 609(b) of ERISA, payment for such

benefits under any such Participating Program shall be made in accordance with any state law which provides that the state has acquired the rights with respect to such individual to such payment for such benefits.

2.14.    Termination of Participation in the Plan

Participation in the Plan as a whole will cease effective as of the earliest of the following:  the date the Plan terminates; the first day of a period for which Participant contributions for the cost of coverage have not been made; the date the Participant is no longer an Eligible Employee; or the date of the Participant's death.

Coverage for a Dependent ends on the earliest of the following:  the first day of the period for which contributions for the cost of such Dependent's coverage have not been made; the date of the Dependent's death; the last day of the month during which the Dependent loses Dependent status; or the date the Eligible Employee's coverage ends.

Notwithstanding the foregoing, if specified in the Participating Program documents, participation in the Plan may cease as late as the last day of the payroll period or month in which the loss of coverage event, identified above, occurred.

### III.    **ADMINISTRATION**

3.1.    Plan Administrator

The Plan Sponsor may appoint one or more individuals from among the officers and employees of the Plan Sponsor to act as the Plan Administrator(s) (referred to in this Plan as the "Plan Administrator," whether one person or more than one person is appointed). If no individual is appointed as Plan Administrator, the Plan Sponsor will be the Plan Administrator. The Plan Administrator will administer the Plan and the Participating Programs (except as otherwise provided in any Participating Program). Nothing herein will restrict the Plan Sponsor's right to remove the Plan Administrator at any time.

The Plan Administrator will have complete control of the administration of the Plan and the Participating Programs, and will serve without additional remuneration, except for reimbursement of out-of-pocket expenses, for so long as it is mutually agreeable to the Plan Administrator and to the Plan Sponsor. The Plan Sponsor will have no duty or responsibility with respect to the administration of the Plan and the Participating Programs other than the appointment and removal of the Plan Administrator.

3.2.    Duties and Powers of the Plan Administrator

The Plan Administrator will have such discretionary powers as may be necessary to discharge its duties hereunder, including, but not limited to, the following:

(a)    In its sole discretion, to construe and interpret the Plan and Participating Programs (including any ambiguities under the Plan and Participating Programs), decide all questions of eligibility and determine the amount, manner and time of payment of any benefits under the Plan and Participating Programs;

(b)    To prescribe procedures to be followed by Participants and beneficiaries filing applications for benefits;

(c)    To cause to be prepared and to cause the distribution of, in such manner as the Plan Administrator determines to be appropriate, information explaining the Plan and Participating Programs;

(d)    To receive from the Employers and from Participants, either directly or indirectly, such information as will be necessary for the proper administration of the Plan and Participating Programs;

(e)    To furnish to the Company or the Company's Board of Directors upon request such annual or other reports with respect to the administration of the Plan and Participating Programs as are reasonable and appropriate;

(f)    To receive, review and keep on file (as it deems convenient or proper) reports of the financial condition, receipts and disbursements, and assets of the Plan and Participating Programs;

(g)    To designate, appoint or employ individuals to assist in the administration of the Plan and Participating Programs and any other agents (corporate or individual) it deems advisable, including legal counsel and such clerical, medical, accounting, auditing, actuarial and other services as it may require in carrying out the provisions of the Plan and Participating Programs; and

(h)    To discharge all other duties set forth herein as duties of the Plan Administrator.

To the extent that the administrative procedures or duties of the Plan Administrator conflict with the provisions of any Participating Program insurance contracts providing Plan benefits, the insurance contracts will govern. The Plan Administrator will have no power to terminate the Plan or the Participating Programs.

3.3.    Rules and Decisions

The Plan Administrator will decide any matter and may adopt any rule or procedure regarding eligibility, benefits, claims, or any other issue arising under this Plan that it deems necessary, desirable or appropriate in the administration of the Plan and the Participating Programs. All rules and decisions of the Plan Administrator will be uniformly and consistently applied to all Eligible Employees and Participants in similar circumstances and will be conclusive and binding on all persons having an interest in the Plan or any Participating Programs.

3.4.    Delegation and Allocation of Responsibility of the Plan Administrator

(a)    The Plan Administrator may allocate or delegate any responsibility regarding the Plan and the Participating Programs provided to it in this Plan Document among one or more "Participating Program Administrators" and may designate other persons, which persons may be either named fiduciaries or persons other than fiduciaries, to carry out such responsibilities. Any such allocation or designation will be in writing. To the extent authority is given by the Plan or a Participating Program document, the document shall constitute an allocation. A Participating Program Administrator shall be a named fiduciary with respect to any and all responsibilities allocated or delegated to such Participating Program Administrator by the Plan Administrator.

(b)    Any person or group of persons may serve in more than one fiduciary capacity with respect to the Plan and/or the Participating Programs.

3.5.    Representations to Fiduciaries

Any person who is a fiduciary with respect to the Plan or the Participating Programs will be entitled to rely on representations made by Eligible Employees, Participants, employees, former employees, beneficiaries, the Plan Sponsor or the administrator of a Participating Program unless the fiduciary knows the representations to be false.

3.6    Administrator's Decision Final

Except as otherwise provided in Article IV, the Plan Administrator (or a Participating Program Administrator to whom the Plan Administrator has allocated or delegated appeals authority) retains full discretionary authority over all appeals following an initial Adverse Benefit Determination (or series of benefit determinations as set forth in the claims procedures for the affected Participating Program) with respect to Participating Programs. In the case of a fully insured Participating Program or an HMO, the insurance company or HMO has full discretionary authority over all appeals following an initial Adverse Benefit Determination (or series of benefit determinations) with respect to the applicable insured Participating Program or HMO. Any interpretation of the provisions of the Plan or any Participating Program and any decisions on any matter within the discretion of the Plan Administrator, a Participating Program Administrator, a Claims Administrator, the insurance company or the HMO will be conclusive and binding on all persons. A misstatement or other mistake of fact will be corrected when it becomes known to the parties and adjustments to an account will be made in a manner the party considers equitable and practicable. Neither the Plan Administrator, nor a Participating Program Administrator, Claims Administrator, insurance company or HMO will be liable in any manner for any determination of fact made in good faith.

3.7.    Indemnity

To the extent permitted by law and to the extent not covered by any applicable insurance policy, the Plan Administrator will be indemnified by the Company against all liability, joint or several, for its acts and omissions and for the acts and omissions of its agents in the administration and operation of the Plan, including all costs and expenses reasonably incurred by it in connection with the defense of any action, suit or proceeding in which it may be made party defendant by reason of it being or having been the Plan Administrator, whether or not then serving as such, including the cost of reasonable settlements (other than amounts paid to the Company) made to avoid costs of litigation and payment of any judgment or decree entered in such action, suit or proceeding.

The Company will not, however, indemnify Plan Administrator with respect to any act finally adjudicated to have been caused by the willful misconduct or bad faith of such Plan Administrator; or with respect to the cost of any settlement unless the Company has approved the settlement. The right of indemnification will not be exclusive of any other right to which the Plan Administrator may be legally entitled and it will inure to the benefit of the duly appointed legal representatives of such member. The terms of this indemnification will also extend to any employees of the Company or any of its Affiliated Employers to whom any fiduciary responsibility has been assigned in connection with the administration of the Plan.

3.8.    Fiduciary Duties and Responsibilities

Each Plan fiduciary shall discharge his or her duties with respect to the Plan and Participating Programs solely in the interest of the Participants and their beneficiaries, for the exclusive purpose of providing benefits to such individuals and defraying reasonable

expenses of administering the Plan, and in accordance with the terms of the Plan. Each fiduciary, in carrying out such duties, shall act with the care, skill, prudence and diligence under the circumstances then prevailing that a prudent person acting in a like capacity and familiar with such matters would use in exercising such authority.

A fiduciary may serve in more than one fiduciary capacity. A named fiduciary may allocate any of the named fiduciary's responsibilities for the operation and administration of the Plan to other fiduciaries. Either the named fiduciary or other fiduciary appointed by the named fiduciary may employ one or more persons to render advice with regard to any responsibilities such fiduciary has under the Plan.

Unless liability is otherwise provided under section 405 of ERISA, a named fiduciary shall not be liable for any act or omission of any other party to the extent that (a) such responsibility was properly allocated to the other party as a named fiduciary, or (b) the other party has been properly designated to carry out such responsibility pursuant to the procedures set forth above.

IV.    CLAIMS AND APPEALS

4.1.    Claims and Appeals Procedures for Participating Programs Subject to ERISA (for claims received prior to 2002)

The claims and appeals procedures for each Participating Program which is subject to ERISA are set forth in the documents listed in Supplement A. Notwithstanding the above, should the documents fail to identify a claims and appeals procedure or should the claims and appeals procedure fail to comply with and/or satisfy the requirements of section 503 of ERISA and the regulations thereunder, the claims and appeals procedures described below shall apply. Any dispute concerning (i) a person's eligibility for "continuation coverage" as described under sections 601 through 607 of ERISA, or (ii) the nature, duration, cost or other terms of continuation coverage, shall be treated as a denial of benefits and the procedure described below shall be used to resolve such a dispute.

If any person (a "claimant") claims benefits under the Plan in addition to those provided for him or her, and the claim is denied in whole or in part, the following claims and appeals procedures will apply:

(a)    The claimant will receive written notice of the denial from the Claims Administrator responsible for the review of claims for benefits under the relevant Participating Program. This notice will be written in a manner calculated to be understood by the claimant and will include the specific reasons for the denial and specific references to any facts or any provisions of the applicable documents on which the denial is based. The notice will be issued within 90 days of the date that the claim was submitted. If special circumstances require up to another 90 days to process the claim, the claimant will be so notified within the initial 90 days. If the claim was denied because specific information or documentation was not provided, the notice will include a description of the additional information or documentation that the applicant must provide in connection with the claim, along with an explanation of why such information or documentation is necessary. The notice will also provide an explanation of the Plan's claims appeal procedure, as set out in paragraph (b), below.

(b)    To appeal a denied claim, the claimant must, within 60 days of receiving the notice of denial, notify in writing either: (i) for self-funded Participating Programs, the Plan Administrator (or its delegate as identified in the notice to the claimant); or (ii) for insured Participating Programs, the insurer (or its delegate as identified in the notice to the claimant) that he or she wishes to appeal the claim denial. The claimant has the right to review relevant documents relating to his claim (including any applicable documents listed in Supplement A) and must submit issues and comments in writing.

The Plan Administrator or the insurer (or their respective delegate) will conduct a full and fair review of the appeal of the claim denial and prepare its decision. For insured Participating Programs, the insurer (or its delegate) will give the claimant

written notice of the decision on the appeal within 60 days after receipt of the claimant's notice of appeal, unless special circumstances require an extension of time for processing, but notice will in any event be given within 120 days after receipt of the claimant's notice of appeal. For self-funded Participating Programs, the Plan Administrator (or its delegate) will make a benefit determination no later than the date of the next regularly scheduled committee meeting (held at least quarterly), which immediately follows the receipt of a request for review. If, however, the request for review is filed within 30 days of the date of such regularly scheduled meeting, the Plan Administrator (or its delegate) will make a benefit determination no later than the date of the second meeting following the receipt of a request for review. If special circumstances require an extension of time for processing, the Plan Administrator (or its delegate) will make a benefit determination no later than the third meeting following the receipt of a request for review.

This notice of the decision on the appeal will be written in a manner calculated to be understood by the claimant and will include the specific reasons for the decision and specific references to any facts or any provisions of the applicable documents on which the decision on appeal is based. The decision of the Plan Administrator or the insurer (or their respective delegate) shall be final and binding.

The Plan Administrator may adopt additional rules for implementing this Section 4.1 provided that such rules are consistent with section 503 of ERISA and the regulations thereunder.

4.2.    Claims and Appeals Procedures for Participating Programs Subject to ERISA (for claims received on or after January 1, 2002)

The claims and appeals procedures for each Participating Program subject to ERISA are set forth in the documents listed in Supplement A. Effective January 1, 2002, if the relevant documents in Supplement A do not identify a claims and appeals procedure, or if the identified procedure conflicts with the procedures described below, the procedures under this Section 4.2 shall apply. Unless otherwise stated, all notices must be provided in writing or by acceptable electronic means. If there is any delay in responding to a claim or appeal due to insufficient information, that delay must be caused by circumstances outside of the control of the Plan. The Plan Administrator may adopt additional rules for implementing these claims and appeals procedures provided that such rules are consistent with the requirements under ERISA. A Participant may make a claim for benefits under any of the Participating Programs by filing a written request with the appropriate Claims Administrator. Where applicable in Sections 4.2 and 4.3, the term "Plan Administrator" shall include any Participating Program Administrator.

(a)    Health Plan Claims and Appeals. For claims and appeals under health plans, the procedures in Section 4.1 shall remain in effect as of January 1, 2002.

(b)    Disability Plan Claims and Appeals

(i)    Filing Claims. The Claims Administrator will make its determination of a disability claim and notify the Participant within 45 days after receipt of the claim, unless an extension of up to 30 days is necessary. The Claims Administrator will notify the Participant if an extension is needed within the initial 45-day period. The notice will state why the extension is necessary and the date the Claims Administrator expects to issue its determination. The Claims Administrator may notify the Participant (during the initial 30-day extension) that an additional extension of up to 30 more days is needed. Any notice of extension will contain an explanation of the standards on which entitlement to the disability benefit is based, the unresolved issues that prevent a decision on the claim, and the additional information needed to resolve those issues. The Participant will be given 45 days to provide any information requested in the extension notice.

(ii)    Adverse Benefit Determinations. If the benefit determination for a disability claim is an Adverse Benefit Determination, the Claims Administrator will send the Participant a notice that will: (1) be written in a manner designed to be understood by the Participant; (2) include the specific reasons for the Adverse Benefit Determination; (3) refer to the Plan and Participating Program provisions on which the determination was based; (4) describe any additional material or information necessary to perfect the claim and explain why the additional material is necessary; (5) explain the Participating Program's review procedures and the time limits applicable; (6) include a statement of the Participant's right to bring a civil action under Section 502(a) of ERISA after receiving a final Adverse Benefit Determination upon appeal; (7) include a copy of any internal rule, guideline, protocol or criterion that was relied on in making the Adverse Benefit Determination, or indicate that such a rule, guideline, protocol or criterion was relied on and that a copy is available free of charge upon request; and (8) if the Adverse Benefit Determination was based on medical necessity, experimental treatment or similar exclusion or limit, either explain the scientific or clinical judgment made or indicate that such an explanation is available free of charge upon request.

(iii)    Appeal of Adverse Benefit Determination. To appeal an Adverse Benefit Determination of any disability claim, a Participant must, within 180 days of receiving the determination, notify the Plan Administrator (or insurer, as applicable). A Participant may submit written comments, documents, records, and other information relating to the claim for benefits and will be given reasonable access to, and copies of, all documents, records, and other information relevant to the claim. The appeal will be conducted by the Plan Administrator (or insurer), as a named fiduciary, who did not make the Adverse Benefit Determination and is not a subordinate of the individual who made the initial Adverse Benefit Determination. This

16

named fiduciary will not give deference to the initial Adverse Benefit Determination and will take into account all comments, documents, records, and other information a Participant submits relating to the claim, without regard to whether the information was submitted or considered in the initial benefit determination. If the Adverse Benefit Determination was based in whole, or in part, on a medical judgment, the Plan Administrator (or insurer) will consult with a health care professional who has appropriate training and experience in the medical field involved. This health care professional will not be an individual who was consulted in connection with the initial Adverse Benefit Determination or the subordinate of any such individual. Finally, the Plan Administrator (or insurer) will identify any medical or vocational experts whose advice was obtained on behalf of the Participating Program in connection with the Adverse Benefit Determination, without regard to whether the advice was relied upon in making the benefit determination.

(iv)    Notice of Decision on Appeal. The Plan Administrator (or insurer) will notify the Participant of the benefit determination on appeal within 45 days of receipt of the Participant's request for review, unless special circumstances require an extension of time of up to 45 days for processing the appeal. If an extension is required, the Plan Administrator (or insurer) will notify the Participant before the expiration of the initial 45-day period. The notice will indicate the special circumstances that require an extension of time and will include the date by which the Plan Administrator (or insurer) expects to issue its determination on the appeal.

(v)    Contents of Notice of Decision on Appeal. If the decision on appeal of a claim is an Adverse Benefit Determination, the Plan Administrator (or insurer) will provide the Participant with a notice of the Adverse Benefit Determination that will: (1) be written in a manner designed to be understood by the Participant; (2) include the specific reasons for the Adverse Benefit Determination; (3) refer to the Plan and Participating Program provisions on which the determination was based; (4) inform the Participant that, upon request and free of charge, the Participant is entitled to reasonable access to and copies of all documents, records, and other information relevant to the claim for benefits; (5) notify the Participant of the Participating Program's voluntary appeal procedures, if any, (including relevant time limits) and of the right to bring legal action under Section 502(a) of ERISA; (6) include a copy of any internal rule, guideline, protocol or criterion that was relied on in making the Adverse Benefit Determination, or indicate that such a rule, guideline, protocol or criterion was relied on and that a copy is available free of charge upon request; (7) if the Adverse Benefit Determination was based on medical necessity, experimental treatment or similar exclusion or limit, either explain the scientific or clinical judgment made or indicate that such an explanation is available upon request, free of charge; and (8) notify the

17

Participant that he or she can contact the Department of Labor to learn about other voluntary alternative dispute resolution options.

(c)    <u>Other ERISA Plan Claims and Appeals</u>

(i)    <u>Filing Claims</u>.  For any claim filed under any Participating Program subject to ERISA which is not a health or disability claim, the Claims Administrator will make its determination and notify the Participant of that determination within 90 days after receipt of the claim.  If special circumstances require up to another 90 days to process the claim, the Claims Administrator will notify the Participant within the initial 90 days.  This notice will describe the special circumstances requiring an extension and the date the Claims Administrator expects to issue its determination.

(ii)    <u>Notice of an Adverse Benefit Determination</u>.  If the benefit determination is an Adverse Benefit Determination, the Claims Administrator will send the Participant a notice that will:  (1) be written in a manner designed to be understood by the Participant; (2) include the specific reasons for the Adverse Benefit Determination; (3) refer to the Plan and Participating Program provisions on which the determination was based; (4) describe any additional material or information necessary to perfect the claim and explain why the additional material is necessary; (5) explain the Participating Program's review procedures and the time limits applicable; and (6) include a statement of the Participant's right to bring a civil action under Section 502(a) of ERISA after receiving a final Adverse Benefit Determination upon appeal.

(iii)    <u>Appeal of Adverse Benefit Determination</u>.  To appeal an Adverse Benefit Determination, a Participant must, within 60 days of receiving the determination, notify the Plan Administrator (or insurer, as applicable).  The Participant may submit written comments, documents, records, and other information relevant to the claim for benefits, and will be given reasonable access to, and copies of, all documents, records, and other information relevant to the claim.  The Plan Administrator's (or insurer's) review will take into account all comments, documents, records, and other information the Participant submits relating to the claim, without regard to whether the information was submitted or considered in the initial benefit determination.

(iv)    <u>Notice of Decision on Appeal</u>.  For insured Participating Programs, the insurer (or its delegate) will notify the Participant of the decision on appeal within 60 days of the insurer's receipt of the appeal, unless special circumstances require an extension of time of up to 60 days for processing the appeal.  For self-funded Participating Programs, the Plan Administrator (or its delegate) will make a benefit determination no later than the date of the next regularly scheduled committee meeting (held at least quarterly), which immediately follows the receipt of a request for

18

review. If however, the request for review is filed within 30 days of the date of such regularly scheduled meeting, the Plan Administrator (or its delegate) will make a benefit determination no later than the date of the second meeting following the receipt of a request for review. If special circumstances require an extension of time for processing, the Plan Administrator (or its delegate) will make a benefit determination no later than the third meeting following the receipt of a request for review. In either case, if an extension is required, the Plan Administrator or insurer (or their respective delegate) will notify the Participant before the expiration of the initial period explaining the special circumstances that require an extension of time and including the date by which the Plan Administrator or insurer expects to issue its determination on appeal.

(v)     Contents of the Notice of Decision on Appeal. If the decision on appeal of a claim is an Adverse Benefit Determination, the Plan Administrator (or insurer) will provide the Participant with a notice of the Adverse Benefit Determination that will: (1) be written in a manner designed to be understood by the Participant; (2) include the specific reasons for the Adverse Benefit Determination; (3) refer to the Plan and Participating Program provisions on which the determination was based; (4) inform the Participant that, upon request and free of charge, he or she is entitled to reasonable access to and copies of all documents, records, and other information relevant to the claim for benefits; (5) notify the Participant of the Participating Program voluntary appeal procedures, if any, and the time limits relevant to those procedures; and (6) notify the Participant of the right to bring legal action under Section 502(a) of ERISA.

4.3.    Claims and Appeals Procedures for Non-ERISA Participating Programs

Participant claims and appeals under the flexible benefits plan (other than for health care flexible spending accounts) will be reviewed by the Plan Administrator and decided in a uniform and non-discriminatory manner pursuant to the regulations under Code section 125. Participant claims and appeals under or any other Participating Program not subject to ERISA will be reviewed by the Plan Administrator (or its delegate) and decided in a uniform and non-discriminatory manner. Claims under the flexible benefits plan or a Participating Program not subject to ERISA must be appealed, in writing, within 60 days of a claim denial.

## V. AMENDMENT OR TERMINATION

5.1. Company Not Committed to Permanent Welfare Benefits

No provision in this Plan document, including any Supplements or documents incorporated by reference through any Supplement, is intended to commit the Company or any Employer to the provision of permanent welfare benefits of any type to any class of employees, former employees or their dependents or to the maintenance of the Plan.

5.2. Right to Amend

The Company may amend or modify any part or all of the Plan and/or any Participating Program at any time by action of any Executive or Senior Vice President of Human Resources for the Company. Any Executive or Senior Vice President of Human Resources for the Company, with agreement of the insurer, may amend any policy of insurance at any time, except that no amendment will reduce benefits payable for claims incurred prior to the date of the amendment. Any Executive or Senior Vice President of Human Resources for the Company, or his or her duly appointed delegate, is authorized to modify Supplements A and B from time to time as needed to update information related to the documents incorporated by reference or the Participating Employers or to make other applicable changes.

5.3. Right to Terminate

By action of any Executive or Senior Vice President of Human Resources for the Company, the Company will have the sole authority to terminate part or all of the Plan and/or any Participating Program as to some or all classes of employees, former employees or their dependents at any time. An Employer may terminate participation in any Participating Program at any time with the consent of the Company (by any Executive or Senior Vice President of Human Resources for the Company) provided that the Employer has satisfied any outstanding funding obligations. Any termination of participation by an Employer must be made by action of the Employer's Board of Directors or by a person designated to act on behalf of the Board of Directors.

5.4. Dissolution, Merger, Consolidation or Reorganization of an Employer

In the event of the dissolution, merger, consolidation or reorganization of an Employer, participation in all Participating Programs shall terminate as to such Employer, unless the participation in one or more of the Participating Programs is continued by a successor to such Employer with the consent of the Company. Such consent will be given only if the successor to the Employer is an Affiliated Employer. In the event of dissolution, merger, consolidation or reorganization of the Company, the Plan and all Participating Programs shall terminate, unless arrangements are made for the continuation of the Plan and any or all Participating Programs by any successor to the Company or any purchaser of all or substantially all of the Company's assets (or otherwise as may be appropriate or desirable under applicable circumstances), in which case the successor or purchaser (or other

applicable entity) will be substituted for the Company under the Plan and such
Participating Programs.

An Employer who adopts the Plan pursuant to Section 8.1 and who ceases to be an
Affiliated Employer of the Company will cease to be a Participating Employer under the
Plan and its Participating Programs; provided, however, that any such former Affiliated
Employer shall remain legally responsible for the payment of any outstanding financial
obligations to one or more Participating Programs.

5.5.    Notice of Amendment or Termination

Affected Participants will be notified of any amendment or termination of a Participating
Program or of the Plan within a reasonable time.

## VI.    PARTICIPANT RIGHTS AND RESPONSIBILITIES

6.1.    No Enlargement of Employee Rights

Nothing in the Plan or the Participating Programs will be deemed to give an Eligible Employee, Participant, or employee the right to be retained in the service of any Employer or to interfere with any right of any Employer to discharge such person.

6.2.    No Assignment

Except as may otherwise be specifically provided in (i) the Plan, (ii) the Participating Program documents listed in Supplement A, or (iii) applicable law, a Participant's rights, interests or benefits under the Plan or the Participating Programs will not be subject in any manner to anticipation, alienation, sale, transfer, assignment, pledge, encumbrance, charge, garnishment, execution or levy of any kind, either voluntary or involuntary, prior to being received by the persons entitled thereto under the terms of the Participating Programs, and any such attempt will be void.

6.3.    Qualified Medical Child Support Order

Notwithstanding anything in the Plan or any Participating Program to the contrary, if the Plan Administrator receives a "qualified medical child support order," as defined in section 609 of ERISA, relating to medical benefits, benefits will be provided under the applicable Participating Programs to the alternate recipient(s), as defined in section 609 of ERISA, specified in the order, but only to the extent such benefits are provided for in the applicable Participating Programs. The Plan Administrator will adopt a written procedure to determine whether a medical child support order is a qualified medical child support order and may establish additional rules for implementing this Section 6.3, so long as those rules are consistent with section 609 of ERISA and any regulations thereunder. The Plan Administrator will provide copies of these procedures as required by applicable law.

6.4.    Subrogation and Third-Party Reimbursement

The subrogation, third-party reimbursement and benefit coordination provisions under the Plan are set forth in each Participating Program. In addition, a Participant will permit suit to be brought in the Participant's name under the direction of and at the expense of the Company or the Participant's Employer if a third party may be liable for payment. The Participating Program does not waive its right to subrogation or third-party reimbursement should it waive the right to receive a subrogation/third-party reimbursement agreement from the Participant prior to the advancement of any monies to the Participant.

If the Participating Program is a self-funded Plan, if the Participating Program does not contain subrogation and third-party reimbursement provisions, or if those provisions

~~conflict with the provisions under this Plan, the following provisions regarding~~ subrogation and third-party reimbursement will apply.

(a)   <u>Subrogation.</u>  The claim of, or with respect to a Participant for benefits under a Participating Program does not affect the Participant's claims or right of action for all damages proximately resulting from sickness or injury caused by the alleged act or omission of another person or entity (the "responsible party"). In addition to its right to third-party reimbursement, in the event of any payment of medical expense benefit under the Participating Program to any Participant, the Participating Program shall, to the extent of such payment, be subrogated to all the rights of recovery of the Participant arising or believed to arise out of any claim or cause of action that may accrue because of any act or omission of a responsible party.

If the Participant receives Participating Program benefits, the Participant agrees to immediately notify the Participating Program of (i) any and all responsible parties and of any third party which the Participant may have a claim against as a result of the sickness or injury, including but not limited to, any insurance company providing coverage to the Participant; and (ii) any and all claims for damages made on behalf of the Participant in connection with the sickness or injury. The Participant further agrees to fully cooperate with the Participating Program and the Claims Administrator or Plan Administrator in obtaining information about the sickness or injury and to take such action to furnish relevant information and assistance and to execute and deliver all necessary instruments as may be required.

The Participating Program has the following rights:  (i) to place a lien against any responsible party or third party to the extent of the benefits paid; (ii) to bring an action on its own behalf, or on behalf of the Participant, against any responsible person or third party; and (iii) to suspend the payment of any benefits under the Participating Program pending receipt from the Participant of acknowledgement, authorization, waiver or release it deems necessary to exercise its rights and privileges under this Section 6.4.

If any party brings action against a responsible party or other third party, the party bringing the action shall give written notice to the other party of the cause of action and of the court in which the action is brought. The other party may, at any time before the trial on the fact, join as a party plaintiff or consolidate the action, if brought independently.

(b)   <u>Third-Party Reimbursement.</u>  If a Participant's sickness or injury is caused by a third party as defined in Section 6.4(c), to the extent that the third party is required to make payment for the sickness or injury, whether by settlement, judgment, through an insurance contract or in any other manner, any medical expense charges incurred as a result of the sickness or injury are payable under the Participating Program subject to the Participating Program's right to third-party reimbursement or subrogation under this Section 6.4.

A Participant whose sickness or injury has been caused by a third party may receive benefits under the Participating Program only if all of the following conditions are met:

    (i)    A properly filed claim for benefits under the Participating Program is filed with the Claims Administrator;

    (ii)    Payment of such benefits by or on behalf of the responsible party or by a third party has not been made; and

    (iii)    The Participant (or in the event of incapacity, that person's legal representative) completes a third-party questionnaire and, at the sole discretion of the Plan Administrator or Claims Administrator, executes a reimbursement agreement.

The Participant agrees, if the Participating Program makes benefit payments, that the Participant will reimburse the Participating Program on a first dollar basis an amount equal to the full amount of the medical expense benefits paid by the Participating Program immediately upon receipt of payment, up to but not more than the aggregate amount recovered from or on behalf of each responsible party and each third-party. The Participant further agrees to provide the Participating Program with a lien, to the extent of benefits provided, which lien may be filed with the responsible party or insurance company of the responsible party whose act or omission caused the injury or sickness or any third-party. Amounts due to the Participating Program pursuant to this Section 6.4 may be applied against any other present or future medical expense benefits (and thereby reduce such benefits) payable to or on behalf of the Participant.

Reimbursement under this Section 6.4 shall apply whether or not liability for the payments is admitted by the responsible party, whether or not a portion of the settlement, judgment or insurance proceeds are expressly apportioned to medical expense charges, and whether or not the Participant has been made whole by the settlement, judgment or insurance proceeds. The Participant will be liable for payment of any and all attorney fees and costs incurred by the Participating Program or the Company in taking legal action against the Participant to obtain reimbursement.

    (c)    Definition of Third-Party. "Third-party" as used under this Section 6.4 means any person or entity from which a Participant can seek compensation for sickness or injury because he or she believes that an act or omission of another person or entity (the responsible party) caused the sickness or injury that gave rise to the medical expense charges that the Participant seeks to have paid or reimbursed by the Participating Program.

6.5    Benefit Coordination

If an individual claiming benefits under the Plan and/or any Participating Program is covered under two or more plans (including the Plan and/or a Participating Program), the order in which benefits shall 'e determined is as follows:

(a)    A plan that has no coordination of benefits provision will always be deemed to have primary benefit payment responsibility.

(b)    The plan covering the individual as an employee pays benefits first. The plan covering the individual as a dependent pays benefits second.

(c)    If no plan is determined to have primary benefit payment responsibility under (b), then the plan that has covered the individual for the longest period has the primary responsibility.

(d)    Except as otherwise provided in (e), the plan covering the parent of an eligible dependent pays first if the parent's birthday (month and day of birth, not year) falls earlier in the year. The plan covering the parent of an eligible dependent pays second if the parent's birthday falls later in the year.

(e)    In the event that the parents of the eligible dependent are divorced or separated, the following order of benefit determination applies:

    (i)    The plan covering the parent with custody of the eligible dependent pays benefits first.

    (ii)    If the parent with custody has not remarried, then the plan covering the parent without custody pays benefits second.

    (iii)    If the parent with custody has remarried, then the plan covering the step-parent pays benefits second and the plan covering the parent without custody pays benefits third.

    (iv)    However, if a divorce decree or other order of a court of competent jurisdiction places the financial responsibility for the child's health care expenses on one of the parents, then the plan covering that parent pays benefits first.

(f)    The plan covering an individual as an employee (or as the employee's dependent) who is neither laid-off nor retired pays benefits first. The plan covering that individual as a laid-off or retired employee (or as that individual's dependent) pays benefits second.

(g)    The plan covering an individual as an employee (or as a dependent of the employee) pays benefits first if such an individual is also being provided COBRA continuation coverage under another plan, and such other plan pays benefits second for such an individual. Conversely, this Plan pays secondary benefits for

any individual who is provided COBRA continuation under this Plan and who
also is covered simultaneously under another plan as an employee (or as a
dependent of an employee). In the event of conflicting coordination provisions
between this Plan and any other plan, this Plan will pay primary benefits for an
individual only if this Plan has provided coverage for a longer period of time.

(h)     Payments for benefits under the Plan will be reduced by any payments for the
same benefits under Medicare. The reduction is the amount payable by Medicare
whether or not the payment is actually made. Consequently, the payment for any
benefits under the Plan will be determined by the applicable Claims
Administrator, and then reduced by the amount payable by Medicare.
Coordination of Plan benefits with Medicare shall be determined in accordance
with applicable federal regulations describing the order of benefit determination
with respect to primary and secondary coverage.

6.6.    Right to Receive and Release Necessary Information

For the purpose of applying and implementing the terms of this Plan or any Participating
Program, the Plan Administrator (or its delegate) may, without the consent of or notice to
any person, release or obtain from any other organization or person any information with
respect to any person that he or she deems to be necessary for these purposes. Any
person claiming benefits under this Plan or any Participating Programs must furnish to
the Plan Administrator (or his delegate) any information necessary to implement this Plan
or the relevant Participating Programs.

6.7.    Notice of Address

Each person entitled to benefits under one or more Participating Programs must file with
the Plan Sponsor, in any form permitted by the Plan Administrator, his or her mailing
address and each change of mailing address. Any communication, statement or notice
addressed to such person at such address will be deemed sufficient for all purposes of the
Plan and the Participating Programs, and there will be no obligation on the part of the
Plan Sponsor, the Plan Administrator (or its delegate), or any insurer to search for or to
ascertain the location of such person.

## VII.   GOVERNING TERMS AND APPLICABLE LAW

7.1.   Severability

If any provision of the Plan or any Participating Program is held by a court of competent jurisdiction to be invalid or unenforceable, the remaining provisions of the Plan or of any Participating Program will continue to be fully effective.

7.2.   Contracts and Agreements

Any contracts or agreements with health care networks, insurance companies or other entities entered into by the Company for the sole purposes of providing for the administration and/or the delivery of benefits under a Participating Program will be initiated, continued or terminated at the sole discretion of the Company. The Company reserves the right to change insurance carriers, HMO options and health care networks at any time. The Company further reserves the right to change between fully insuring and self-insuring benefits at any time. Administrative agreements between third-party administrators and the Company are separate business agreements and are not part of this Plan document or any underlying Participating Program.

7.3.   Resolution of Conflicts

To the extent that there is a conflict between the Plan document and the Participating Program documents incorporated herein by reference, the terms of the Plan document will control; provided, however, that in the case of issues relating to fully insured benefits, the applicable insurance policy and certificate or HMO contract and booklet will control to the extent that they do not conflict with applicable state or federal law.

7.4.   Application of State Law

Except as otherwise preempted by federal law, this Plan will be administered, construed and enforced according to the laws of the State of Illinois (excluding conflict of laws provisions) and in courts situated in Illinois.

## VIII.  GENERAL PROVISIONS

8.1.  Additional Employers

Any Affiliated Employer that is not a Participating Employer may become one by adopting the Plan and its Participating Programs with the approval of the Board of Directors of the Company.

8.2.  Facility of Payment

When a Participant is under a legal disability, or in the opinion of an Employer is in any way incapacitated so as to be unable to manage his financial affairs, the Employer, Plan Administrator or Claims Administrator may make benefit payments to the Participant's legal representative.  If a legal representative has made no claim, benefit payments may be made to a relative or close friend of the Participant for the Participant's benefit.  Any payments made in accordance with this Section 8.2 will be a full and complete discharge of any liability for such payment under the Plan and the Participating Programs.

8.3.  Evidence

Evidence required by the Company, any Employer, the Plan Administrator or Claims Administrator under a Participating Program may be by certificate, affidavit, document or other information which the person acting on it considers pertinent and reliable, provided that the document is signed, made or presented by the proper party(ies).

8.4.  Uniform Rules

The Plan Administrator and each Claims Administrator will administer the Plan and Participating Programs on a reasonable and non-discriminatory basis and will apply uniform rules to all similarly situated Participants.

8.5.  Unclaimed Self-Funded Plan Funds

Unless otherwise specified in the Participating Program, in the event a benefits check issued by the Claim Administrator or Plan Administrator under a self-funded Participating Program remains uncashed after 18 months, the check will be voided and funds will be returned to the Participating Program to be applied to the payment of current benefits and administrative fees under the Participating Program.  In the event the Participant or the Participant's beneficiary (as defined under ERISA) subsequently requests payment with respect to the voided check, the Claims Administrator or Plan Administrator for the applicable Participating Program will make such payment under the terms and conditions of that Participating Program as in effect when the claim was originally presented.

8.6.    Gender and Number.

Unless the context clearly indicates otherwise, words in any gender shall include any other gender, the plural shall include the singular, and the singular shall include the plural.

IN WITNESS WHEREOF, THE NORTHERN TRUST COMPANY has caused this instrument to be executed by its duly authorized officers on this _____ day of _____, 20____, effective as of January 1, 2001.

THE NORTHERN TRUST COMPANY

By _____

Title_____

ATTEST:


By