SUPPLEMENT A

# THE NORTHERN TRUST COMPANY
# EMPLOYEE WELFARE BENEFIT PLAN

The terms and provisions of the following Participating Programs sponsored by the Company are incorporated by reference. The applicable provisions of the Health and Welfare Benefit Sourcebooks are also incorporated by this reference into this Plan and the Participating Programs. For HMO Plans, the Covered Employers listed are for general reference only; actual eligibility is determined under the terms of the incorporated documents based on factors that include location of a Participant's residence.

| PARTICIPATING PROGRAM NAME | DOCUMENTS INCORPORATED BY REFERENCE | COVERED EMPLOYERS |
|---|---|---|
| Flexible Benefits Plan | Northern Trust Company Flexible Benefits Plan, as amended and restated January 1, 2000 | All U.S. Participating Employers |
| 24-Hour Accident Insurance | Cigna Group Accident Policy. Contract number OK6579 (effective 1/1/2000) | All U.S. Participating Employers |
| Business Travel Accident Insurance | Cigna Accident Policy. Contract number ABL618558 (effective 1/1/2001) | All U.S. Participating Employers |
| Dental Maintenance Organization | Aetna Group Insurance Contract. Contract number G-69966 (effective 1/1/1997) | All U.S. Participating Employers |
| Dental Care Plan-PDO | Aetna ASO Agreement. Contract number 69966-1 (effective 1/1/1997) | All U.S. Participating Employers |
| Non-Contributory Life Insurance Plan | Cigna Group Term Life Policy (Contributory). Contract number FLX51475 (effective 5/1/2000) | All U.S. Participating Employers |
| Dependent Life Insurance Plan | Cigna Group Term Life Policy (Dependents). Contract number FLX51475 (effective 5/1/2000) | All U.S. Participating Employers |
| Contributory Life Insurance Plan | Cigna Group Term Life Policy (Non-Contributory). Contract number FLX51475 (effective 5/1/2000) | All U.S. Participating Employers |
| Long-Term Care Plan | MetLife National LTC Coalition Offer. Contract number 96674 (effective 8/1/2001) | All U.S. Participating Employers |
| Short-Term Disability Plan | CNA Contract number SR-83108355 (effective 7/1/1999) | All U.S. Participating Employers |
| Long-Term Disability Core Plan | CNA Contract number SR-83108357 (effective 7/1/1999) | All U.S. Participating Employers |
| Long-Term Disability Buy-Up Plan | CNA Contract number SR-83108357 (effective 9/1/2000) | All U.S. Participating Employers |

| PARTICIPATING PROGRAM NAME | DOCUMENTS INCORPORATED BY REFERENCE | COVERED EMPLOYERS |
|---|---|---|
| Medical Care Plan (for Plan Year beginning January 1, 2001) | Blue Cross and Blue Shield of Illinois. National/Major ASO Account PPO+ Benefit Program Description, PPO Plan (effective 1/1/2001) | All U.S. Participating Employers |
|  | Blue Cross and Blue Shield of Illinois. National/Major ASO Account Comprehensive Major Medical Benefit Program Description, Comprehensive – Out of Area (effective 1/1/2001) | All U.S. Participating Employers |
|  | Blue Cross and Blue Shield of Illinois.  ASO Accounts PPO – Hospital & Physician Network, BA #0003 (effective 1/1/2001) | All U.S. Participating Employers |
|  | Walgreens Health Initiatives Client Benefit Design Summary (effective 1/1/2001 through 12/31/2003) | All U.S. Participating Employers |
| Medical Care Plan (for Plan Year beginning 1/1/2002) | Blue Cross and Blue Shield of Illinois. National/Major ASO Account PPO+ Benefit Program Description, BA #0011, PPO Plan (effective 1/1/2002) | All U.S. Participating Employers |
|  | Blue Cross and Blue Shield of Illinois. National/Major ASO Account Comprehensive Major Medical Benefit Program Description, BA #0012, Comprehensive – Out of Area (effective 1/1/2002) | All U.S. Participating Employers |
|  | Blue Cross and Blue Shield of Illinois.  ASO Accounts PPO – Hospital & Physician Network, BA #0003 (effective 1/1/2002) | All U.S. Participating Employers |
|  | Walgreens Health Initiatives Client Benefit Design Summary (effective 1/1/2001 through 12/31/2003) | All U.S. Participating Employers |

| PARTICIPATING PROGRAM NAME | DOCUMENTS INCORPORATED BY REFERENCE | COVERED EMPLOYERS |
|---|---|---|
| Medical Care Plan (for Plan Year beginning 1/1/2003) | Blue Cross and Blue Shield of Illinois. National/Major ASO Account PPO+ Benefit Program Description, BA #0011, PPO Plan (effective 1/1/2003) | All U.S. Participating Employers |
| | Blue Cross and Blue Shield of Illinois. National/Major ASO Account Comprehensive Major Medical Benefit Program Description, BA #0012, Comprehensive – Out of Area (effective 1/1/2003) | All U.S. Participating Employers |
| | Blue Cross and Blue Shield of Illinois. ASO Accounts PPO – Hospital & Physician Network, BA #0003 (effective 1/1/2003) | All U.S. Participating Employers |
| | Walgreens Health Initiatives Client Benefit Design Summary (effective 1/1/2001 through 12/31/2003) | All U.S. Participating Employers |
| HMO Plans | • United Healthcare of Arizona, United Healthcare Choice Group Policy. Contract number 22297 (effective 1/1/2001) | • Northern Trust Bank, N.A.[1]<br>• Northern Trust Securities, Inc. |
| | • Cigna (Southern California). Contract number 1779 (effective 1/1/2000) | • Northern Trust Bank of California N.A.<br>• Northern Trust Securities, Inc. |
| | • Cigna (San Diego). Contract number 8178 (effective 1/1/2001) | • Northern Trust Bank of California N.A. |
| | • Kaiser Group Agreement (Northern California). Contract number 26590 (effective 1/1/2001) | • Northern Trust Bank of California N.A.<br>• Northern Trust Securities, Inc. |
| | • Kaiser Group Agreement (Southern California). Contract number 107956 (effective 1/1/2001) | • Northern Trust Bank of California N.A.<br>• Northern Trust Securities, Inc. |
| | • Pacificare-Evidence of Coverage and Owner's Manual. Contract number B1200 (effective 1/1/2000) | • Northern Trust Bank, N.A.[2] |

---

[1] Northern Trust Bank, N.A. was the result of the merger of Northern Trust Bank of Arizona N.A. and Northern Trust Bank of Colorado effective 2/18/02. Prior to the merger, Northern Trust Bank of Arizona N.A. was the covered employer.

[2] Northern Trust Bank, N.A. was the result of the merger of Northern Trust Bank of Arizona N.A. and Northern Trust Bank of Colorado effective 2/18/02. Prior to the merger, Northern Trust Bank of Colorado was the covered employer.

| PARTICIPATING PROGRAM NAME | DOCUMENTS INCORPORATED BY REFERENCE | COVERED EMPLOYERS |
|---|---|---|
| | • Cigna Policy Certificate. Contract number DE590353 (effective 1/1/1997) | • All U.S. Participating Employers |
| | • AVMed Group Policy – Group Medical and Hospital Service Contract. Contract number 05746-0001 (effective 12/2000) | • Northern Trust Bank of Florida N.A.<br>• The Northern Trust Company<br>• Northern Trust Securities, Inc. |
| | • Cigna (Vero Beach, Florida). Contract number N00 (effective 1/1/2000) | • Northern Trust Bank of Florida N.A.<br>• Northern Trust Securities, Inc. |
| | • Cigna (Ft. Meyers, Florida; Bonita Springs, Florida; Naples, Florida). Contract number 1109 (effective 1/1/2000) | • Northern Trust Bank of Florida N.A.<br>• Northern Trust Securities, Inc. |
| | • Cigna (Georgia). Contract number 1087 (effective 1/1/2000) | • Northern Trust Investments, Inc.<br>• Northern Trust Retirement Consulting, L.L.C.<br>• Northern Trust Securities, Inc. |
| | • Kaiser Group Medical and Hospital Service Agreement (Georgia). Contract number 953-100 (effective 1/1/1999) | • Northern Trust Investments, Inc.<br>• Northern Trust Retirement Consulting, L.L.C.<br>• Northern Trust Securities, Inc. |
| | • Aetna Group Agreements. Contract number US62641 (effective 1/1/1999) | • Northern Trust Securities, Inc. (IL and TX)<br>• Northern Trust Bank of Florida N.A.<br>• The Northern Trust Company<br>• Northern Trust Investments, Inc.<br>• Northern Trust Services, Inc.<br>• The Northern Trust International Banking Corporation (NY)<br>• Northern Trust Company of New York<br>• Northern Trust Bank of Texas N.A.<br>• Northern Trust Retirement Consulting, ...L.C.<br>• The Northern Trust Company of Connecticut (IL) |
| | • HMO Illinois – HMO Group Administration Document. Contract number H80000 (effective 1/1/2001) | • The Northern Trust Company<br>• Northern Trust Investments, Inc.<br>• Northern Trust Services, Inc.<br>• Northern Trust Securities, Inc.<br>• Northern Trust Retirement Consulting, L.L.C. (IL)<br>• The Northern Trust Company of Connecticut (IL) |

A-4

| PARTICIPATING PROGRAM NAME | DOCUMENTS INCORPORATED BY REFERENCE | COVERED EMPLOYERS |
|---|---|---|
| | • Humana Group Contract. Contract number 05009 effective 1/1/2000) | • The Northern Trust Company<br>• Northern Trust Investments, Inc.<br>• Northern Trust Services, Inc.<br>• Northern Trust Securities, Inc.<br>• Northern Trust Retirement Consulting, L.L.C. (IL)<br>• The Northern Trust Company of Connecticut (IL) |
| | • Unicare Group Healthcare Contract. Contract number C27163(GG015101) (effective 1/1/1999) | • The Northern Trust Company<br>• Northern Trust Investments, Inc.<br>• Northern Trust Services, Inc.<br>• Northern Trust Securities, Inc.<br>• Northern Trust Retirement Consulting, L.L.C. (IL)<br>• The Northern Trust Company of Connecticut (IL) |
| | • Blue Care Network Group Letter of Agreement. Contract number 07849-225 (effective 1/1/1999 through 12/31/01) | • Northern Trust Bank, FSB<br>• The Northern Trust Company |
| | • Pacificare Group Subscriber Agreement. Contract number 801740 (effective 1/1/2000) | • Northern Trust Retirement Consulting, L.L.C.<br>• Northern Trust Bank, FSB |
| | • Cigna (Worldwide Short-Term assignments). Contract number DE653580 (effective 11/15/2000) | • All U.S. Participating Employers |
| Vision Plan | • VSP (Vision Service Plan) Group Vision Care Policy. Contract number 12154797 (effective 1/1/2001) | • All U.S. Participating Employers |
| Education Assistance Program | • Educational Assistance Policy in Employee Handbook (effective 1/1/2000) | • All U.S. Participating Employers |

Updated 6/10/03

SUPPLEMENT B

# EMPLOYERS PARTICIPATING IN THE NORTHERN
## TRUST COMPANY EMPLOYEE WELFARE BENEFIT PLAN

The following Affiliated Employers participate in the Plan, with the consent of the Company:

| EMPLOYER | PARTICIPATION DATE |
|---|---|
| Northern Trust Corporation<br>50 South LaSalle Street<br>Chicago, IL 60675 | |
| The Northern Trust Company<br>50 South LaSalle Street<br>Chicago, IL 60675 | |
| The Northern Trust<br>International Banking Corporation<br>40 Broad Street, 10th Floor<br>New York, NY 10004 | |
| Northern Trust Investments, Inc.<br>50 South LaSalle Street<br>Chicago, IL 60675 | |
| Norlease, Inc.<br>50 South LaSalle Street<br>Chicago, IL 60675 | |
| NT Mortgage Holdings LLC<br>50 South LaSalle Street<br>Chicago, IL 60675 | |
| Northern Trust Bank of Florida N.A.<br>700 Brickell Avenue<br>Miami, FL 33131 | |
| Northern Trust Bank of Arizona N.A.[3]<br>2398 East Camelback Road<br>Phoenix, AZ 85016 | |
| Northern Trust Bank of California N.A.<br>355 South Grand Avenue, Suite 2600<br>Los Angeles, CA 90071 | |
| Northern Trust Bank of Texas N.A.<br>2020 Ross Avenue<br>Dallas, TX 75201 | |

**EMPLOYER**                                        **PARTICIPATION DATE**

Northern Trust Bank, FSB
*prior to August 1, 2002:*
     40701 Woodward Avenue, Suite 110
     Bloomfield Hills, MI 48304
*after August 1, 2002:*
     10 W. Longlake Rd.
     Bloomfield Hills, MI 48304

Northern Trust Bank, N.A.[3]
2398 East Camelback Rd.
Phoenix, AZ 85016

Northern Trust Bank of Colorado[3]
1200 17th Street
Denver, CO 80202

Northern Trust Global Advisors, Inc.
300 Atlantic Street, Suite 400
Stamford, CT 06901

The Northern Trust Company of Connecticut
300 Atlantic Street, Suite 400
Stamford, CT 06901

The Northern Trust Company of New York
40 Broad Street
New York, NY 10004

Northern Trust Securities, Inc.
50 South LaSalle Street
Chicago, IL 60675

Northern Trust Retirement Consulting, L.L.C.
3003 Summit Boulevard, Suite 100
Atlanta, GA 30319

CH02/22130408.16

---

[3] Effective 2/18/02 Northern Trust Bank of Colorado merged into Northern Trust Bank of Arizona N.A. The merged entity was then renamed Northern Trust Bank, N.A. Employees of the merged Northern Trust Bank, N.A. continued to participate in the Plan.

**Amendment Number One to**
**The Northern Trust Company**
**Employee Welfare Benefit Plan**
*(Effective as of January 1, 2001)*

WHEREAS, The Northern Trust Company, (the "Company" or "Plan Sponsor") maintains The Northern Trust Company Employee Welfare Benefit Plan (the "Plan"); and

WHEREAS, under Section 5.2, the Company has granted any Executive or Senior Vice President of Human Resources for the Company the authority to amend or modify the Plan; and

WHEREAS, the Health Insurance Portability and Accountability Act of 1996, as amended from time to time ("HIPAA") and the regulations thereunder at 45 CFR Parts 106 and 164, Subparts A and E, as amended from time to time (the "HIPAA Privacy Rules") impose certain privacy obligations on group health plans, including the Plan; and

WHEREAS, the HIPAA Privacy Rules require the Company to amend the Plan to comply with its privacy obligations;

NOW, THEREFORE, by virtue and in exercise of the amending authority reserved to the undersigned under Section 5.2 of the Plan, effective April 14, 2003, the Plan is hereby amended as follows:

1. By adding the following new Section 1.24 to the Plan, immediately following Section 1.23 thereof:

> "HIPAA
> 'HIPAA' means the Health Insurance Portability and Accountability Act of 1996, as amended from time to time."

2. By adding the following new Article IX to the Plan, immediately following Section 8.6 thereof:

**"IX.    Health Information Privacy**

This Article IX applies to the Plan only to the extent that the Plan or any of the Participating Programs constitutes a "health plan" that uses or discloses "protected health information" ("PHI") as those terms are defined in 45 CFR Parts 160 and 164, Subparts A and E, as amended from time to time (the "HIPAA Privacy Rules"). For purposes of this Article IX, terms defined in the HIPAA Privacy Rules but not in this Plan shall be interpreted and administered in accordance with the HIPAA Privacy Rules.

9.1.    Uses and Disclosures of PHI

    (a)    Uses and Disclosures Generally

        (i)    Permitted and Required Uses and Disclosures. The Privacy Official shall use and disclose PHI in accordance with the HIPAA Privacy Rules, including to the extent that it determines that:

(1)    such use or disclosure is needed for the "payment" of Participant claims, the "treatment" of Participants under the Plan or the "health care operations" of the Plan, as such terms are defined in the HIPAA Privacy Rules;

(2)    such use or disclosure is required or permitted by law;

(3)    such use or disclosure has been authorized by the relevant Participant(s) in accordance with the HIPAA Privacy Rules;

(4)    such use or disclosure is appropriate under Section 9.2 (governing access to PHI), Section 9.3 (describing the process to amend PHI), or Section 9.4 (controlling accountings of disclosures of PHI); or

(5)    such use or disclosure is made to a person involved, as determined by the Privacy Official or its delegate, in the relevant Participant's care.

(ii)    <u>Certification by Plan Sponsor</u>. Unless specifically permitted by law, the Privacy Official shall not disclose any PHI to the Plan Sponsor unless: (A) such disclosure is to enable the Plan Sponsor to perform "plan administration functions" as described in the HIPAA Privacy Rules and (B) the Plan Sponsor has certified that this Plan document has been amended to incorporate the requirements of Section 164.504(f)(2)(ii) of the HIPAA Privacy Rules and has agreed to comply with these requirements.

(iii)    <u>No Other Uses or Disclosures</u>. In no event shall the Privacy Official or Plan Sponsor use or disclose PHI for employment-related actions and decisions, in connection with any other benefit plan or for any other purpose other than as required by law or as required or permitted by this Plan document. The Privacy Official shall not disclose PHI to the Plan Sponsor other than for purposes of performing "plan administrative functions" as defined in the HIPAA Privacy Rules. The Plan shall not disclose any Participant PHI to the Plan Sponsor unless Participants are provided with a notice of privacy practices which states that such disclosures may be made.

(iv)    <u>Business Associates</u>. To the extent required by law, the Privacy Official shall not disclose PHI to an individual or entity which constitutes a "business associate" under the HIPAA Privacy Rules, except as provided under a "business associate agreement" that meets the requirements of the HIPAA Privacy Rules.

(v)    <u>Minimum Necessary</u>. In no event shall the use or disclosure of PHI by the Privacy Official exceed the amount reasonably determined by the Privacy Official to be the minimum use or disclosure necessary for the intended purposes of the use or disclosure. To the extent allowed by the HIPAA Privacy Rules, the Privacy Official may rely on a requested disclosure as the minimum disclosure necessary.

(b)    Administrative Requirements

    (i)    <u>Separation of Plan Administration and Plan Sponsor</u>. Access to PHI for Plan administration purposes shall be limited to (1) the Privacy Official and contact person appointed in accordance with Subparagraph 9.1(b)(ii); (2) any individual who, at the time of the relevant use or disclosure of PHI, is (A) a member of the Plan Sponsor's benefits division staff or human resources service center staff, or a manager with supervisory responsibility for such staff members and (B) assigned to perform specific Plan administrative functions that involve the use or disclosure of PHI; and (3) employees who provide support to the individuals identified in Clause 9.1(b)(i)(2) above, such as accountants and information system technicians. None of the individuals identified in the preceding sentence shall have access to PHI, except as reasonably necessary to perform the Plan administrative functions which are assigned or delegated to them. In case of any delegation, the individual to whom duties are assigned shall be required to comply with the provisions of this Article IX. Beyond the individuals identified in this Subparagraph 9.1(b)(i), no other individuals employed by the Plan Sponsor shall have access to PHI.

    (ii)    <u>Privacy Official and Contact Person</u>. The Privacy Official of the Plan, who shall be appointed by the Plan Administrator, shall be responsible for the development and implementation of the Plan's privacy policy (as provided in the HIPAA Privacy Rules) and administrative procedures. The contact person or persons for purposes of compliance with the HIPAA Privacy Rules, who may be either the Privacy Official or other individual(s) appointed by the Privacy Official, shall be responsible for receiving Participant complaints and responding to Participant requests for additional information about such policies and procedures. The Privacy Official may delegate its duties as described in this Article IX to the contact person, an individual designated as having access to PHI in accordance with Subparagraph 9.1(b)(i), or a business associate, to the extent necessary and appropriate for the proper and efficient administration of the Plan and compliance with the HIPAA Privacy Rules.

    (iii)    <u>Noncompliance</u>. Any individual identified in Subparagraph 9.1(b)(i) who fails to comply with the Plan's privacy policy and related procedures shall be subject to the disciplinary action up to an including termination, unless and until the Privacy Official or its delegate establishes specific rules for violation of the terms of this Article IX.

(c)    Legal Standards

    (i)    <u>Right to Revise Policy and Notice</u>. To the fullest extent allowed by the HIPAA Privacy Rules, the Privacy Official shall be permitted to modify the Plan's privacy policy and notify Participants of those modifications.

    (ii)    <u>More Stringent State Law</u>. This Plan shall be administered and interpreted to comply with any applicable state law, except to the extent that such state law is preempted by ERISA or HIPAA.

(iii)    <u>Cooperate with HHS</u>. The Privacy Official shall disclose PHI, its internal practices, books, and records, as required, to the Department of Health and Human Services ("HHS") for purposes of investigating or determining compliance with the HIPAA Privacy Rules and the underlying statutory provisions which they interpret.

9.2.    <u>Access and Copying of PHI</u>

(a)    <u>Access</u>. Participant access to Participant PHI shall be governed by this Section 9.2 and 45 CFR 164.524. This Section 9.2 applies to a Participant's PHI that is maintained by the Privacy Official or its delegate, except: psychotherapy notes; information compiled with a reasonable anticipation of, or for use in, a civil, criminal or administrative proceeding; and information that is not part of a "designated record set" as defined in the HIPAA Privacy Rules.

(b)    <u>Administration of Written Requests</u>. A Participant may request access to, inspect, and copy his or her PHI using forms and procedures established by the Privacy Official or its delegate, as applicable. Such request may also be made by a personal representative (as described in the HIPAA Privacy Rules) of the Participant, in which case the provisions of this Section 9.2 will apply to the personal representative as if he or she were the Participant.

(i)    If the requested PHI is maintained or accessible to the Privacy Official or its delegate onsite, the Privacy Official or its delegate will grant or deny the request in writing within 30 days of its receipt of the request, unless it is unable to do so and during that 30-day period provides the Participant with a written statement of the reasons for the delay and the date on which the Privacy Official or its delegate will grant or deny the request. In no event will this extension period exceed 30 days.

(ii)    If the requested information is not maintained or accessible to the Privacy Official or its delegate onsite, the Privacy Official or its delegate will grant or deny the request in writing within 60 days of receipt of the request, unless it is unable to do so and during that 60-day period provides the Participant with a written statement of the reasons for the delay and the date on which the Privacy Official or its delegate will grant or deny the request. In no event will this extension period exceed 30 days.

(c)    <u>Request Granted</u>. If the Privacy Official or its delegate grants a Participant's request to either inspect PHI or copy it, or both, the Privacy Official or its delegate will give the Participant such access to the PHI. If PHI is requested in a format in which the PHI can be readily produced, the PHI will be produced in that requested format. If the PHI cannot be readily produced in the requested format (as determined by the Privacy Official or its delegate), the Privacy Official or its delegate may provide it in readable hard copy format or some other form agreed to by the Participant. Alternatively, the Privacy Official or its delegate may provide the Participant with a summary or explanation of the requested PHI if the Participant agrees in advance to the summary or explanation format and to the fee (if any) imposed for such summary or explanation. The Privacy Official or its delegate will arrange for access to the requested PHI to take

4

place within the time periods described in Paragraph 9.2(b). The Privacy Official or its delegate will arrange a time and place for the Participant to access, inspect, and/or copy of the PHI or will mail a copy of the PHI at the Participant's request. The Privacy Official or its delegate may impose a reasonable, cost-based fee for providing requested PHI if the fee includes only the cost for copying (both the supplies and labor), postage (if mailing of PHI is requested), and preparation of summaries or explanations (if agreed to as provided above).

(d)     <u>Request Denied.</u>

(i)     The Privacy Official or its delegate may deny a Participant's request and such denial will be considered final in the following cases: (1) the PHI is excepted from the right of access as specified in Paragraph 9.2(a) above; (2) the PHI is created or obtained in the course of ongoing research (as described in the HIPAA Privacy Rules) and the Participant consented to the restricted access when he or she agreed to participate in the research; (3) the PHI is contained in records subject to the Federal Privacy Act and may be denied under that Act; or (4) the PHI was obtained from someone other than a health care provider under a promise of confidentiality and access would be reasonably likely to reveal the source of the information.

(ii)    The Privacy Official or its delegate may deny a Participant's request for access to PHI, provided that the Participant is allowed to have such denial reviewed, if a licensed health care professional, in the exercise of professional judgment, has determined that the access requested is: (1) reasonably likely to endanger the life or physical safety of the Participant or another person; (2) reasonably likely, if the PHI refers to another person, to cause substantial harm to that person; or (3) reasonably likely, if the access is requested by a Participant's personal representative, to cause substantial harm to the Participant or another person.

(iii)   If the Privacy Official or its delegate partially denies a Participant's request for access to certain PHI under Subparagraph 9.2(d)(ii), the Privacy Official or its delegate will make other PHI requested available to Participant. Additionally, if a request of PHI is denied (in whole or in part), the Privacy Official or its delegate will provide the Participant with a timely denial written in plain language and containing the basis for the denial; a statement of the Participant's review of denial rights (if applicable) and how to exercise those rights; and a description of how the Participant may submit a complaint. If the Privacy Official or its delegate does not maintain the PHI requested, but knows where it is maintained, the Privacy Official or its delegate must inform the Participant where the request should be directed.

(iv)    If a Participant's request for access is denied under Subparagraph 9.2(d)(ii), the Participant may request to have the denial reviewed by a licensed health care professional which the Privacy Official or its delegate has designated as the reviewing official and who did not participate in the original decision to deny the request. The Privacy Official or its delegate will promptly refer the request for review to the designated reviewing

official, who will then determine whether or not to deny the access requested based on the acceptable grounds for denial described in Subparagraph 9.2(d)(ii). The Privacy Official or its delegate will promptly provide written notice to the Participant of that determination and take action necessary to carry out this determination.

9.3.    <u>Amending PHI</u>

(a)    <u>Ability to Amend.</u>  A Participant's ability to amend his or her PHI shall be governed by this Section 9.3 and 45 CFR 164.526. This Section 9.3 applies to a Participant's PHI that is maintained by the Privacy Official or its delegate, except: psychotherapy notes; information compiled with a reasonable anticipation of, or for use in, a civil, criminal or administrative proceeding; or information that is not part of a "designated record set" as defined in the HIPAA Privacy Rules.

(b)    <u>Requests for Amendment and Plan Response.</u>  A Participant may request an amendment in writing, using forms and procedures established by Privacy Official or its delegate, as applicable, if such request is supported by a reason to amend. Such request may also be made by a personal representative of the Participant, in which case the provisions of this Section 9.3 will apply to the personal representative as if he or she were the Participant. The Privacy Official or its delegate will act on the written request no later than 60 days after receipt of such request. If the Privacy Official or its delegate is unable to act within this time, it may extend the period for up to 30 days by providing the Participant with a written statement of the reason for the delay and the date by which the Privacy Official or its delegate will complete its action on the request.

(c)    <u>Amendment Granted.</u>  If the Privacy Official or its delegate grants the requested amendment (in whole or in part), it must make the appropriate amendment to the PHI or pertinent record. Such amendment will identify the affected PHI or records and append or otherwise provide a link to the location of the amendment. The Privacy Official or its delegate must also timely inform the Participant that the amendment is accepted and obtain the Participant's agreement to inform:  (i) those identified by the Participant as having received the PHI and needing the amendment and (ii) those known by the Privacy Official or its delegate to have received the PHI and that may foreseeably rely on the PHI to the detriment of the Participant.

(d)    <u>Amendment Denied.</u>

(i)    <u>Reasons for Denial.</u>  The Privacy Official or its delegate may deny a request for amendment if the PHI (1) was not created by, or on behalf of, the Plan (unless the Participant provides a reasonable basis to believe that the originator of the PHI is no longer available to act on the requested amendment); (2) is not part of a "designated record set" as defined in the HIPAA Privacy Rules; (3) would not be available for Participant access under Section 9.2; or (4) is accurate and complete without the amendment.

(ii)    <u>Notice of Denial.</u>  If the Privacy Official or its delegate denies the request for amendment, it will send the Participant a denial written in plain language that contains a statement about: (1) the basis for the denial; (2)

6

the Participant's right to submit a written statement disagreeing with the denial and how such statement may be filed; (3) how, if a statement of disagreement is not filed, the Participant may request that the Privacy Official or its delegate include the request for amendment and the denial with any future disclosures of the PHI which is the subject of the requested amendment; and (4) a description of the complaint procedures, including name or title and telephone number of the designated contact person or office.

(iii)    Statement of Disagreement. If a Participant request for amendment is denied, the Participant may file a written statement of disagreement. Such statement must be a reasonable length and must be filed using forms and procedures established by the Privacy Official or its delegate.

(iv)    Rebuttal Statement. Whenever a Participant submits a statement of disagreement under Subparagraph 9.3(d)(ii), the Privacy Official or its delegate may prepare a written rebuttal to that statement. The Privacy Official or its delegate will provide a copy of that rebuttal to the affected Participant.

(v)    Future Disclosures. The Privacy Official or its delegate will identify the PHI and append or otherwise link the amendment, denial, statement of disagreement, and rebuttal to the relevant records. The Privacy Official or its delegate will include such information, or an accurate summary of such information, with all future disclosures of the PHI if the Participant submitted a statement of disagreement. If the disclosure is made using a standard transaction that does not permit the material to be included with the disclosure, the Privacy Official or its delegate may transmit the material separately. If the Participant does not submit a statement of disagreement, the Privacy Official or its delegate will include the request for amendment and denial with future disclosures only if the Participant makes such a request. If the Privacy Official or its delegate receives notice from another "covered entity" as defined in the HIPAA Privacy Rules about an amendment to a Participant's PHI, the Privacy Official or its delegate must amend the PHI accordingly.

9.4.    Accounting for Disclosures of PHI

(a)    Accounting of Disclosures. A Participant's ability to receive an accounting of disclosures of his or her PHI is governed by this Section 9.4 and 45 CFR 164.528. A Participant may request an accounting of disclosures of PHI made by the Privacy Official or its delegate for any period less than six years prior to the date of the request, unless the disclosure was: (i) to carry out treatment, payment and health care operations as provided in Clause 9.1(a)(i)(1); (ii) to the Participant; (iii) to persons involved in the Participant's care or for other notification purposes provided for in the HIPAA Privacy Rules; (iv) for national security or intelligence purposes; (v) to correctional institutions or law enforcement officials; (vi) made prior to April 14, 2003 or such later date that may be determined by HHS or (vii) made pursuant to a valid Participant authorization. A request for an accounting of disclosures of a Participant's PHI may also be made by a personal representative

of the Participant, in which case the provisions of this Section 9.4 will apply to the personal representative as if he or she were the Participant.

(b)    Temporary Suspension.  The Privacy Official or its delegate may temporarily suspend a Participant's ability to receive an accounting of disclosures made to a health oversight agency or law enforcement official if the accounting would be reasonably likely to impede the agency's or official's activities.  The ability may only be suspended if the relevant agency or official provides the Privacy Official or its delegate with a written or oral statement specifying such impediment and the time for which the suspension is required.  If this statement is an oral statement, the Privacy Official or its delegate will document the oral statement, including the identity of the agency or official making the statement; temporarily suspend the right to an accounting subject to the statement; and limit the suspension to no more than 30 days from the date of the oral statement unless a written statement is submitted during that time period.

(c)    Content of the Accounting.  For each disclosure made, the written accounting will include:  the date of disclosure; the name and address of the recipient of the PHI; a brief description of the PHI disclosed; and the purpose of the disclosure.  (In lieu of a description of the purpose of the disclosure, the Privacy Official may provide a copy of the Participant's written authorization as permitted under the HIPAA Privacy Rules, or a copy of the written request for a disclosure pursuant to an HHS investigation or as permitted by the HIPAA Privacy Rules.)  If the Privacy Official or its delegate makes multiple disclosures of PHI to the same person or entity for a single purpose, the accounting prepared by the Privacy Official or its delegate need only include complete information for the first disclosure, and the frequency or number, including the date of the last such disclosure, for subsequent disclosures.

(d)    Administrative Requirements.  The Privacy Official or its delegate must act on the Participant's request for an accounting no later than 60 days after the receipt of such request.  The Privacy Official or its delegate may extend this period for up to 30 additional days if it provides the Participant with a written statement of the reason for the delay and the date by which the accounting will be provided.  The first accounting requested in any twelve-month period will be provided free of charge, but each subsequent request made within that same period will be charged a cost-based fee for completing the requested accounting.  The Privacy Official or its delegate will inform the Participant of such fee in advance and provide the Participant the opportunity to withdraw or modify the request for a subsequent accounting.

9.5.    Requests for Restrictions and Confidential Communications

(a)    Restrictions.  Restrictions to Participant PHI shall be governed by this Paragraph 9.5(a) and 45 CFR 164.522(a).  Under this Paragraph 9.5(a), a Participant may request that the Privacy Official or its delegate restrict uses or disclosures of PHI about the Participant to carry out treatment, payment or health care operations.

(i)    <u>Granting a Restriction</u>. The Privacy Official or its delegate is not required to agree to restriction. If the Privacy Official or its delegate agrees to a restriction, the Plan may not use or disclose the applicable PHI in violation of the restriction.

(ii)    <u>Disclosures to Family Members and Other Designated Individuals</u>. The Privacy Official or its delegate will agree to a request by a Participant to refrain from disclosing such Participant's PHI to his or her family members or other individuals involved in the Participant's health care or payment for such care. If a Participant does not request such a restriction, the Privacy Official or its delegate may, in its administration of the Plan, disclose PHI to the applicable Participant's family members or other individual involved in the Participant's health care or payment for such care.

(iii)    <u>Use or Disclosure of Restricted PHI</u>. Even if the Privacy Official or its delegate agrees to the restriction, the PHI subject to the restriction may be disclosed if it is needed to provide emergency treatment, provided that the Privacy Official or its delegate requests that the recipient of the restricted PHI refrains from further disclosing the PHI. Also, a restriction shall not be effective for uses and disclosures requested by HHS or uses and disclosures for which the Participant would not otherwise have the opportunity to agree or object.

(iv)    <u>Terminating a Restriction</u>. The Privacy Official or its delegate may terminate a restriction, if:

(1)    the relevant Participant agrees to request the termination in writing;

(2)    the relevant Participant orally agrees to the restriction if the Privacy Official or its delegate documents the oral agreement; or

(3)    the Privacy Official or its delegate informs the relevant Participant that it is terminating its agreement to restrict PHI, except that such termination shall be effective only with respect to PHI created or received after it has so informed the Participant.

(b)    <u>Confidential Communications</u>. Participant requests for confidential communications shall be governed by this Paragraph 9.5(b) and 45 CFR 164.522(b). A Participant may request, in writing, to receive communications of PHI from the Privacy Official or its delegate by alternative means or at alternative locations. The Privacy Official or its delegate shall accommodate reasonable requests for confidential communications if such requests clearly state that the disclosure of all or part of that information could endanger the Participant.

9.6.    <u>Additional Obligations of Plan Sponsor</u>

(a)    <u>Compliance by Agents</u>. Any agents, including subcontractors, to whom the Plan Sponsor provides PHI received from the Plan must agree to the same restrictions and conditions that apply to the Plan Sponsor. Any contract between the Plan or

Plan Sponsor and any agents or subcontractors providing services to the Plan which meet the definition of "business associate" under the HIPAA Privacy Rules, must comply with the requirements of the HIPAA Privacy Rules.

(b)    <u>Report Improper Uses or Disclosures</u>.  If Plan Sponsor becomes aware of any use or disclosure of PHI that is inconsistent with the purpose for which it was provided, the Plan Sponsor will report such use or disclosure to the Privacy Official or its designee.

(c)    <u>Destroy PHI or Retain Protections</u>.  The Plan Sponsor must return or destroy all PHI received from the Privacy Official that the Plan Sponsor still maintains in any form at the time when it is no longer needed for the purpose for which the disclosure was made.  If return or destruction is not feasible, the Plan Sponsor shall limit further uses and disclosures to those purposes that make return or destruction infeasible."

THE NORTHERN TRUST COMPANY

By: _____
Name:  Martin J. Joyce, Jr.
Title:   Senior Vice President, Human Resources

## AMENDMENT NUMBER TWO TO
## THE NORTHERN TRUST COMPANY EMPLOYEE WELFARE BENEFIT PLAN
### (Effective as of January 1, 2001)

**WHEREAS**, The Northern Trust Company (the "Company") maintains The Northern Trust Company Employee Welfare Benefit Plan, Effective as of January 1, 2001 (the "Plan"); and

**WHEREAS**, amendment of the Plan is now considered desirable:

**NOW, THEREFORE**, by virtue and in exercise of the amending power reserved to the Company and the undersigned under Section 5.2 of the Plan, the Plan is hereby amended effective as of June 15, 2003 as follows:

1.      The following shall be added as Appendix #1 to the Plan:

### "Appendix #1

*Special Rules for Former NTRC Employees*

This Appendix #1 to The Northern Trust Company Employee Welfare Benefit Plan, Effective January 1, 2001 (the "Plan") is made a part of the Plan [and part of The Northern Trust Company Flexible Benefits Plan (As Amended and Restated Effective January 1, 2000) which is a Participating Program under and forms part of the Plan (the "Flexible Benefits Program")]. This Appendix supersedes any provisions of the Plan and the Flexible Benefits Program to the extent that they are not consistent with the Appendix. Unless the context clearly implies or indicates to the contrary, a word, term or phrase used or defined in the Plan or the Flexible Benefits Program is similarly used or defined for purposes of this Appendix #1.

1.      <u>Application</u>. This Appendix supplements and modifies the provisions of the Plan and the Flexible Benefits Program in connection with the sale by Northern Trust Retirement Consulting, L.L.C. ("NTRC"), a Participating Employer, of certain assets of NTRC's retirement plan consulting and administration business to Hewitt Associates, LLC ("Hewitt"), and with the employment by Hewitt of certain former NTRC employees pursuant to an Asset Purchase Agreement dated as of June 13, 2003 by and between NTRC and Hewitt (the "Agreement").

2.      <u>Effective Date</u>. The effective date of this Appendix #1 is June 15, 2003.

3.      <u>NTRC/Hewitt Participants</u>. The term "NTRC/Hewitt Participant" means any NTRC employee who is listed on Schedule 6.8 of the Agreement, terminates employment with NTRC on June 15, 2003, is a Participant in the Plan on such employment termination, accepts an offer of employment from Hewitt pursuant to Section 6.8 of the Agreement and becomes an employee of Hewitt on June 16, 2003 (or, in the case of any such NTRC employee who is on leave or disability as of the Closing

Date (as defined in the Agreement), on such date, but before January 1, 2004, as such NTRC employee is able to return to work and becomes an employee of Hewitt).

4.    Anything in the Plan or the Flexible Benefits Program to the contrary notwithstanding, an NTRC/Hewitt Participant who has a balance remaining in his or her Day Care Account at his or her termination of employment with NTRC may continue to submit Day Care Account claims for any eligible expenses incurred after becoming an employee of Hewitt and prior to the earlier of (a) January 1, 2004 or (b) his or her termination of employment with Hewitt; but reimbursements under this paragraph 4 will be limited to the balance remaining in such NTRC/Hewitt Participant's Day Care Account at his or her termination of employment with NTRC. Eligible claims incurred prior to January 1, 2004 (or termination of employment with Hewitt, if earlier) may be submitted for reimbursement until March 31, 2004.

5.    Limitations on Appendix. The provisions of this Appendix #1 shall only apply with respect to an NTRC/Hewitt Participant who terminates employment with NTRC on the Closing or before January 1, 2004, and who at that time meets all requirements to be an NTRC/Hewitt Participant. No other Participant (including any current or former NTRC employee who does not then meet the requirements to be an NTRC/Hewitt Participant) shall have any rights whatsoever at any time under this Appendix #1. Further, no NTRC/Hewitt Participant who is reemployed by the Company or any Participating Employer at any time shall have any rights whatsoever under this Appendix #1 with respect to any termination of employment following such reemployment. Nothing in this Appendix #1 shall be construed to provide an NTRC/Hewitt Participant with any rights or benefits under the Plan or the Flexible Benefits Program other than those described in paragraph 4 above.

**IN WITNESS WHEREOF**, the Company has caused this amendment to be executed on its behalf as of June 15, 2003.

THE NORTHERN TRUST COMPANY

By: _____

Name: Martin J. Joyce, Jr.

Title:   Senior Vice President

## AMENDMENT NUMBER THREE TO
## THE NORTHERN TRUST COMPANY EMPLOYEE WELFARE BENEFIT PLAN
### (Effective as of January 1, 2001)

**WHEREAS**, The Northern Trust Company (the "Company") maintains The Northern Trust Company Employee Welfare Benefit Plan, Effective as of January 1, 2001 (the "Plan"); and

**WHEREAS**, amendment of the Plan is now considered desirable:

**NOW, THEREFORE**, by virtue and in exercise of the amending power reserved to the Company under Section 5.2 of the Plan, and pursuant to the authority delegated to the undersigned officer by resolutions of the Board of Directors of the Company dated February 17, 2004, the Plan is hereby amended as follows:

1.    To add the following as new Section 3.9 of the Plan:

> "3.9    Terms Include Authorized Delegates
> Where appropriate, the term 'Claims Administrator,' 'Plan Administrator,' and 'Participating Program Administrator' shall also mean any applicable subcommittee or duly authorized delegates of a Claims Administrator, the Plan Administrator or a Participating Program Administrator, as the case may be. Such duly authorized delegate may be an individual or an organization within the Company or a Claims Administrator, the Plan Administrator or a Participating Program Administrator, or may be an unrelated third party individual or organization."

2.    To delete the first sentence of Section 5.2 of the Plan in its entirety and to substitute the following therefor:

> "The Company reserves the right at any time and from time to time either retroactively or prospectively:
>
> (a)    to make material amendments to the Plan by action of the Compensation and Benefits Committee of the Board of Directors (or by action of the Board of Directors, if the Compensation and Benefits Committee is unavailable or unable to act for any reason);
>
> (b)    to make (i) non-material or administrative amendments to the Plan or (ii) any amendment to the Pan deemed required, authorized or desirable under applicable statutes, regulations or rulings, by action of the Executive Vice President and Human Resources Department Head of the Company (or his or her duly-authorized designees)."

3.    To delete the first sentence of Section 5.3 of the Plan in its entirety and to substitute the following therefor:

> "The Company reserves the right at any time and from time to time to terminate part or all of the Plan and/or any Participating Program as to some or all classes of employees, former employees or their dependents, by action of the Compensation and Benefits Committee of the Board of Directors (or by action of the Board of Directors, if the Compensation and Benefits Committee is unavailable or unable to act for any reason)."

4.    To delete the phrase "the Board of Directors of the Company" from Section 8.1 of the Plan and to substitute the following therefor:

> "the Compensation and Benefits Committee of the Board of Directors of the Company (or the approval of the Board of Directors if the Compensation and Benefits Committee is unavailable or unable to act for any reason)."

5.    To add the following as new section 8.7 of the Plan:

> "8.7    Electronic or Telephonic Notices
> Any election, notice, direction or other such action required or permitted to be made in writing under the Plan or a Participating Program may also be made electronically, telephonically or otherwise, to the extent then permitted by applicable law and the administrative rules prescribed by a Claims Administrator, the Plan Administrator, a Participating Program Administrator or an insurer, as applicable."

**IN WITNESS WHEREOF**, the Company has caused this amendment to be executed on its behalf this _31ˢᵗ_ of _March_, 2004 effective such _31ˢᵗ_ of _March_, 2004.

                              **THE NORTHERN TRUST COMPANY**


                              By: _Mart Joyce_
                              Name: Martin J. Joyce, Jr.
                              Title:   Senior Vice President

AMENDMENT NUMBER FOUR TO
THE NORTHERN TRUST COMPANY
EMPLOYEE WELFARE BENEFIT PLAN
*(Effective as of January 1, 2001)*

**WHEREAS,** The Northern Trust Company, (the "Company" or "Plan Sponsor") maintains The Northern Trust Company Employee Welfare Benefit Plan (the "Plan");

**WHEREAS,** under Section 5.2, the Company has granted any Executive or Senior Vice President of Human Resources for the Company the authority to amend or modify the Plan;

**WHEREAS,** the Plan is required to comply with the Department of Health and Human Services regulations, Health Insurance Reform: Security Standards, 45 C.F.R. Parts 160, 162, and 164, as amended from time to time (the "Security Rules"), under the Health Insurance Portability and Accountability Act of 1996, as amended from time to time ("HIPAA"); and

**WHEREAS,** the Security Rules require the Company to amend the Plan to comply with its security obligations.

**NOW, THEREFORE,** by virtue and in exercise of the amending authority reserved to the undersigned under Section 5.2 of the Plan, effective April 21, 2005, the Plan is hereby amended by adding the following new Section 9.7 to the Plan, immediately following Section 9.6 thereof:

9.7   **Security of Electronic PHI**

(a)   Security Officer.  The "Security Official" of the Plan, who shall be appointed by the Plan Administrator, shall be responsible for the development and the implementation of the Plan's security policy, as provided in 45 C.F.R. Section 164.308(a)(2).

(b)   Security Rule Compliance.  The Plan Sponsor shall: (a) implement administrative, physical and technical safeguards that reasonably and appropriately protect the confidentiality, integrity, and availability of the electronic PHI that is created, received, maintained, or transmitted on behalf of the Plan; (b) ensure that adequate separation as required by 45 C.F.R Section 164.504(f)(2)(iii) is supported by reasonable and appropriate security measures; (c) require any agent, including a subcontractor, to whom it provides this information to agree to implement reasonable and appropriate security measures to protect the electronic PHI;  (d) report to the Plan any successful unauthorized use, access, disclosure, modification, or destruction of electronic PHI or interference with system operations in an information system containing PHI of which it becomes aware; (e) report as frequently as necessary to the Plan the aggregate number of unsuccessful, unauthorized attempts to use, access, disclose, modify, or destroy electronic PHI or interfere with system operations in an information system containing PHI of which it becomes

aware; and (f) implement and maintain policies and procedures relating to these safeguards.

Dated as of this 21st, day of April, 2005.

THE NORTHERN TRUST COMPANY

By: _____

Name:  Martin J. Joyce, Jr.

Title:  Senior Vice President, Human Resources

### AMENDMENT NUMBER FIVE TO
### THE NORTHERN TRUST COMPANY EMPLOYEE WELFARE BENEFIT PLAN
### (Effective as of January 1, 2001)

**WHEREAS**, The Northern Trust Company (the "Company") maintains The Northern Trust Company Employee Welfare Benefit Plan, Effective as of January 1, 2001 (the "Plan"); and

**WHEREAS**, amendment of the Plan is now considered desirable:

**NOW, THEREFORE**, by virtue and in exercise of the amending power reserved to the undersigned officer under Section 5.2 of the Plan, the Plan is hereby amended effective as of the dates provided herein, as follows:

1.  Effective as of January 1, 2005, to delete the word "wholly" from paragraph (b) of Section 1.11 of the Plan.

2.  Effective as of January 1, 2005, to add the following immediately before the last sentence of Section 2.2 of the Plan:

    "The trust agreement documenting any trust to which funds are transferred to fund any benefit under the Plan shall form part of the Plan and be incorporated herein by this reference."

3.  Effective as of the date this Amendment is executed, to delete Section 6.4 of the Plan in its entirety and to substitute the following therefor:

    "6.4    <u>Subrogation and Third-Party Reimbursement</u>

    The subrogation, third-party reimbursement and benefit coordination provisions under the Plan are set forth in each Participating Program. In addition, a Participant will permit suit to be brought in the Participant's name under the direction of and at the expense of the Company or the Participant's Employer if a third party may be liable for payment. The Plan's rights under this Section 6.4 apply to any benefits paid to or on behalf of a Participant as a result of any sickness or injury caused by a third party.

    If the Participating Program is a self-funded Plan, if the Participating Program does not contain subrogation and third-party reimbursement provisions, or if those provisions conflict with the provisions under this Plan, the following provisions regarding subrogation and third-party reimbursement will apply.

    (a)    <u>Subrogation</u>. The claim of, or with respect to, a Participant for benefits under a Participating Program does not affect the

Participant's claims or right of action for all damages proximately resulting from sickness or injury caused by the alleged act or omission of another person or entity (the "responsible party"). In addition to its right to third-party reimbursement, in the event of any payment of medical expense benefits under the Participating Program to any Participant, the Plan shall, to the extent of such payment, be subrogated to all the rights of recovery of the Participant arising or believed to arise out of any claim or cause of action that may accrue because of any act or omission of a responsible party.

By accepting any Participating Program benefits with respect to a sickness or injury caused by a third party, a Participant: (i) agrees to immediately notify the Participating Program of any and all responsible parties of any third party which the Participant may have a claim against as a result of the sickness or injury, including but not limited to, any insurance company providing coverage to the Participant; (ii) agrees to immediately notify the Participating Program of any and all claims for damages made on behalf of the Participant in connection with the sickness or injury; and (iii) automatically assigns to the Plan any right to recover payments from any third party, including any payments the third party made or makes to the Participant. The Participant further agrees to do whatever the Plan reasonably deems to be necessary to secure the Plan's right of subrogation, and to fully cooperate with the Participating Program, the Plan and the Claims Administrator or Plan Administrator in obtaining information about the sickness or injury and to take action to furnish relevant information and assistance and to execute and deliver all necessary instruments as may be required.

The Plan has a first-priority lien against any responsible party or third party to the extent of the benefits paid. The Plan has the right to bring an action on its own behalf, or on behalf of the Participant, against any responsible person or third party, and to suspend the payment of any benefits under the Participating Program upon any failure to cooperate in abstaining from or taking any action under this Section 6.4.

If any party brings action against a responsible party or other third party, the party bringing the action shall give written notice to the other party of the cause of action and of the court in which the action is brought. The other party may, at any time before the trial on the fact, join as a party plaintiff or consolidate the action, if brought independently.

(b)  Third-Party Reimbursement.  If a Participant's sickness or injury is caused by a third party as defined in Section 6.4(c), to the extent that the third party is required to make payment for the sickness or injury, whether by settlement, judgment, through an insurance contract or in any other manner, any medical expense charges incurred as a result of the sickness or injury are payable under the Participating Program subject to the Plan's right to third-party reimbursement or subrogation under this Section 6.4.

A Participant whose sickness or injury has been caused by a third party may receive benefits under the Participating Program only if all of the following conditions are met:

(i)  A completed claim for benefits under the Participating Program is filed properly with the appropriate Claims Administrator;

(ii)  Payment of such benefits by or on behalf of the responsible party or by a third party has not been made; and

(iii)  The Participant (or in the event of incapacity, that person's legal representative) completes a third-party questionnaire and, at the sole discretion of the Plan Administrator or Claims Administrator, executes a reimbursement agreement.

By accepting any Participating Program benefits with respect to a sickness or injury caused by a third party, a Participant: (i) agrees to immediately notify the Participating Program of any and all responsible parties and of any third party which the Participant may have a claim against as a result of the sickness or injury, including but not limited to, any insurance company providing coverage to the Participant; (ii) agrees to immediately notify the Participating Program of any and all claims for damages made on behalf of the Participant in connection with the sickness or injury; and (iii) automatically assigns to the Plan any right to recover payments from any third party, including any payments the third party made or makes to the Participant. The Participant further agrees to do whatever the Plan reasonably deems to be necessary to secure the Plan's right of subrogation, and to fully cooperate with the Participating Program, the Plan and the Claims Administrator or Plan Administrator in obtaining information about the sickness or injury and to take such action to furnish relevant information and assistance and to execute and deliver all necessary instruments as may be required.

The Plan has a first-priority lien against any responsible party or third party to the extent of the benefits paid. The Plan has the right

-3-

to bring an action on its own behalf, or on behalf of the Participant, against any responsible person or third party, and to suspend the payment of any benefits under the Participating Program upon any failure to cooperate in abstaining from or taking any action under this Section 6.4.

The Plan reserves the right to independently sue for recovery of any benefit payments, even if no claim against a third party is pursued by, or on behalf of, a Participant. Also, the Plan reserves the right to join any action filed by or on behalf of a Participant to recover its benefit payments.

Reimbursement under this Section 6.4 shall apply whether or not liability for the payments is admitted by the responsible party, whether or not a portion of the settlement, judgment or insurance proceeds is expressly apportioned to medical expense charges, and whether or not the Participant has been made whole by the settlement, judgment or insurance proceeds. The Participant will be liable for payment of any and all attorney fees and costs incurred by the Participating Program, the Plan, the Claims Administrator, the Plan Administrator or the Company in taking legal action to obtain reimbursement.

(c) <u>Definition of Third-Party</u>. "Third-party" as used under this Section 6.4 means any person or entity from which a Participant can seek compensation for sickness or injury because the Participant believes that an act or omission of another person or entity (the responsible party) caused the sickness or injury that gave rise to the medical expense charges that the Participant seeks to have paid or reimbursed by the Participating Program."

4. To ratify and confirm all amendments to the Plan adopted since January 1, 2005 effective as of the date of any such amendment.

**IN WITNESS WHEREOF**, the Company has caused this amendment to be executed on its behalf this _2 1_ of December, 2005 effective as provided herein.

**THE NORTHERN TRUST COMPANY**

By: _Timothy P. Moen_
Name: Timothy P. Moen
Title: Executive Vice President and
Human Resources Department Head

-4-

**AMENDMENT NUMBER SIX TO**
**THE NORTHERN TRUST COMPANY EMPLOYEE WELFARE BENEFIT PLAN**
**(Effective as of January 1, 2001)**

**WHEREAS**, The Northern Trust Company (the "Company") maintains The Northern Trust Company Employee Welfare Benefit Plan, Effective as of January 1, 2001 (the "Plan"); and

**WHEREAS**, amendment of the Plan is now considered desirable:

**NOW, THEREFORE**, by virtue and in exercise of the amending power reserved to the undersigned officer under Section 5.2 of the Plan, the Plan is hereby amended effective as of the dates provided herein, as follows:

The Plan is hereby amended to delete Section 6.4 of the Plan in its entirety and to substitute the following therefor:

"6.4    Subrogation and Third-Party Reimbursement

The subrogation, third-party reimbursement and benefit coordination provisions under the Plan are set forth in each Participating Program. In addition, a Participant will permit suit to be brought in the Participant's name under the direction of and at the expense of the Company or the Participant's Employer if a third party may be liable for payment. The Plan's rights under this Section 6.4 apply with respect to any recoveries as provided in this Section 6.4 to the extent of any benefits paid to or on behalf of a Participant as a result of any sickness or injury caused by a third party.

If the Participating Program is a self-funded Plan, if the Participating Program does not contain subrogation and third-party reimbursement provisions, or if those provisions conflict with the provisions under this Plan, the following provisions regarding subrogation and third-party reimbursement will apply.

(a)    Subrogation. The claim of, or with respect to, a Participant for benefits under a Participating Program does not affect the Participant's claims or right of action for all damages proximately resulting from sickness or injury caused by the alleged act or omission of another person or entity (the "responsible party"). In addition to its right to third-party reimbursement, in the event of any payment of medical expense benefits under the Participating Program to any Participant, the Plan shall, to the extent of such payment, be subrogated to all the rights of recovery of the Participant arising or believed to arise out of any claim or cause of

action that may accrue because of any act or omission of a responsible party.

By accepting any Participating Program benefits with respect to a sickness or injury caused by a third party, a Participant: (i) agrees to immediately notify the Participating Program of any and all responsible parties or of any third party which the Participant may have a claim against as a result of the sickness or injury, including but not limited to, any insurance company providing coverage to the Participant; (ii) agrees to immediately notify the Participating Program of any and all claims for damages made on behalf of the Participant in connection with the sickness or injury; and (iii) automatically assigns to the Plan any right to recover payments from any third party, including any payments the third party made or makes to the Participant. The Participant further agrees to do whatever the Plan reasonably deems to be necessary to secure the Plan's right of subrogation, and to fully cooperate with the Participating Program, the Plan and the Claims Administrator or Plan Administrator in obtaining information about the sickness or injury and to take action to furnish relevant information and assistance and to execute and deliver all necessary instruments as may be required.

The Plan has a first-priority lien against any responsible party or third party to the extent of the benefits paid. The Plan has the right to bring an action on its own behalf, or on behalf of the Participant, against any responsible party or third party, and to suspend the payment of any benefits under the Participating Program upon any failure to cooperate in abstaining from or taking any action under this Section 6.4.

If any party brings action against a responsible party or other third party, the party bringing the action shall give written notice to the other party of the cause of action and of the court in which the action is brought. The other party may, at any time before the trial on the fact, join as a party plaintiff or consolidate the action, if brought independently.

(b)    Third-Party Reimbursement. If a Participant's sickness or injury is caused by a third party as defined in Section 6.4(c), to the extent that the third party is required to make payment for the sickness or injury, whether by settlement, judgment, through an insurance contract or in any other manner, any medical expense charges incurred as a result of the sickness or injury are payable under the Participating Program subject to the Plan's third-party reimbursement or subrogation rights with respect to any recoveries

to the extent of any medical expense charges incurred, all as provided in this Section 6.4.

A Participant whose sickness or injury has been caused by a third party may receive benefits under the Participating Program only if all of the following conditions are met:

(i)  A completed claim for benefits under the Participating Program is filed properly with the appropriate Claims Administrator;

(ii)  Payment of such benefits by or on behalf of the responsible party or by a third party has not been made; and

(iii)  The Participant (or in the event of incapacity, that person's legal representative) completes a third-party questionnaire and, at the sole discretion of the Plan Administrator or Claims Administrator, executes a reimbursement agreement.

By accepting any Participating Program benefits, a Participant: (i) agrees to immediately notify the Participating Program of any and all responsible parties and of any third party which the Participant may have a claim against as a result of any sickness or injury caused by a third party, including but not limited to, any insurance company providing coverage to the Participant; (ii) agrees to immediately notify the Participating Program of any and all claims for damages made on behalf of the Participant in connection with any such sickness or injury; and (iii) automatically assigns to the Plan any right to recover payments from any third party, including any payments the third party made or makes to the Participant. The Participant further agrees to do whatever the Plan reasonably deems to be necessary to secure the Plan's right of subrogation, and to fully cooperate with the Participating Program, the Plan and the Claims Administrator or Plan Administrator in obtaining information about the sickness or injury and to take such action to furnish relevant information and assistance and to execute and deliver all necessary instruments as may be required.

The Plan has, to the extent of benefits paid, a first-priority lien against any recoveries from a responsible party or third party. The Plan has the right to bring an action on its own behalf, or on behalf of the Participant, against any responsible person or third party, and to suspend the payment of any benefits under the Participating Program upon any failure to cooperate in abstaining from or taking any action under this Section 6.4.

The Plan reserves the right to independently sue for recovery of any benefit payments, even if no claim against a third party is pursued by, or on behalf of, a Participant. Also, the Plan reserves the right to join any action filed by or on behalf of a Participant to recover its benefit payments.

Reimbursement under this Section 6.4 shall apply whether or not liability for the payments is admitted by the responsible party, whether or not a portion of the settlement, judgment or insurance proceeds is expressly apportioned to medical expense charges, and whether or not the Participant has been made whole by the settlement, judgment or insurance proceeds. The Participant will be liable for payment of any and all attorney fees and costs incurred by the Participating Program, the Plan, the Claims Administrator, the Plan Administrator or the Company in taking legal action to obtain reimbursement.

(c)    Definition of Third-Party.    "Third-party" as used under this Section 6.4 means any person or entity from which a Participant can seek compensation for sickness or injury because the Participant believes that an act or omission of another person or entity (the responsible party) caused the sickness or injury that gave rise to the medical expense charges that the Participant seeks to have paid or reimbursed by the Participating Program."

**IN WITNESS WHEREOF**, the Company has caused this amendment to be executed on its behalf this ___ of December, 2006 effective such ___ of December, 2006.

**THE NORTHERN TRUST COMPANY**

By: _____
Name: Timothy P. Moen
Title: Executive Vice President and
        Human Resources Department Head

4574344.2

-4-

## AMENDMENT NUMBER SEVEN TO
## THE NORTHERN TRUST COMPANY EMPLOYEE WELFARE BENEFIT PLAN
### (Effective as of January 1, 2001)

**WHEREAS,** The Northern Trust Company (the "Company") maintains The Northern Trust Company Employee Welfare Benefit Plan, Effective as of January 1, 2001 (the "Plan"); and

**WHEREAS,** amendment of the Plan is now considered desirable:

**NOW, THEREFORE,** by virtue and in exercise of the amending power reserved to the undersigned officer under Section 5.2 of the Plan, the Plan is hereby amended effective as of July 1, 2007, to add the following as a new final sentence at the end of the second paragraph of Section 2.1 of the Plan:

"Notwithstanding the foregoing, effective July 1, 2007, solely for purposes of the Flexible Benefits Plan and the Medical Care Plan, Eligible Employee includes an Employee (as defined in 956 CMR (Code of Massachusetts Regulations) 4.00) other than part-time Employees working, on average, fewer than 64 hours per month for an Employer."

**IN WITNESS WHEREOF,** the Company has caused this amendment to be executed on its behalf this 12th of July, 2007, effective as of July 1, 2007.

THE NORTHERN TRUST COMPANY

By: _____

Name: Timothy P. Moen
Title: Executive Vice President and
Human Resources Department Head